No. 13,104.

RADETSKY v. MONTGOMERY ET AL.

(30 P. [2d] 858)

Decided March 5, 1934.

Mr. HARRY S. CLASS, for plaintiff in error.

412

Mr. Horace N. Hawkins, Mr. Page M. Brereton, for defendants in error.

*In Department.*

Mr. Justice Butler delivered the opinion of the court.

Norton Montgomery and Erskine Meyer sued M. S. Radetsky for attorneys' fees. Radetsky defended on the ground that in the rendition of their professional services the plaintiffs were guilty of such gross neglect and incompetence as to make their services valueless. He also filed a counterclaim for damages claimed to have been caused by their negligence and incompetence. The fault is claimed to be that of Montgomery. After hearing a mass of evidence—the record before us contains 1,348 folios—the court, hearing the case without a jury, found the issues on both the complaint and the counterclaim for the plaintiffs and rendered judgment in their favor. The defendant seeks a reversal of the judgment. Radetsky admits that if the plaintiffs are entitled to anything, they are entitled to the amount sued for.

The Hartman Exploration and Development Company was the lessee in several leases of coal mining property in Boulder county. Radetsky had furnished machinery and other supplies and advanced money to enable the company to carry on operations. On February 21, 1928, Joseph Simpson, as creditor, sued the Hartman company, praying for the appointment of a receiver to preserve the mine, which had been closed by a strike of workmen and was in imminent danger of being flooded. The court appointed a receiver, with authority to operate the mine for its preservation only, and to issue his certificates in payment of expenses. Radetsky acquired some of these certificates. Montgomery, in behalf of Radetsky, petitioned for and obtained leave to sue for the money loaned by him to the Hartman company. In that suit judgment for $7,940.88 was obtained by default.

1.  Counsel for Radetsky contends that Montgomery was negligent in attempting, without first obtaining the court's permission, to terminate the Hartman company leases and obtain new leases running to Radetsky. Prior to the commencement of the receivership suit the Hartman company had violated the terms of the leases in several particulars, thereby making them subject to being terminated at the election of the lessors. On April 18, 1928, Montgomery prepared for the lessors a notice of forfeiture of the leases. The leases allowed thirty days to make good the default. The notice was directed to and was served upon the Hartman company. The receiver was notified of the default and of the owners' election to terminate the leases. On April 30 Montgomery prepared, and the owners executed, new leases of the mining property to Radetsky. Two months thereafter Montgomery, in behalf of Radetsky, caused to be served upon the receiver a demand to be permitted to enter into possession for the purpose of operating the mine and preserving and protecting the property. He advised the receiver to apply to the court for instructions, and thereupon prepared, and the receiver signed and presented to the court, a petition for instructions. Upon hearing the petition, the court said that Montgomery, for Radetsky, had stated to the court that if allowed to take possession Radetsky would do so at his own risk, and if it should be determined that he had no title or rights under the leases and should be ordered to return possession to the receiver, any expense incurred or work done would be at Radetsky's hazard. The court further stated that it was not advised and was uncertain as to the rights of the parties under the leases, and desired to leave the parties as nearly as possible in status quo, without loss or damage either to the receiver or to Radetsky or to the estate. The court thereupon instructed the receiver "to neither grant nor deny the demand." Radetsky was present and the situation was explained fully to and was understood

by him. He proceeded to enter into possession at his own risk, and operated the mine, expending a large sum of money in so doing. The court entered an order, as of October 31, 1928, directing the receiver to sue to recover the leasehold interests and for possession of the property; whereupon the receiver brought such suit against the Everson Coal Company, a corporation organized by Radetsky and to whom he had transferred the leases. That case never was brought to trial. Upon receiving notice of the Hartman company's breach of the terms of the leases, the receiver had the right to make good the default (if it could be done) and adopt the leases. This he did not do.

The leases obtained by Radetsky never were set aside, but by agreement, expressly approved by the court, were assigned to the purchaser of the property at the receiver's sale, and the purchaser thereafter operated the property under those very leases.

In 6 Corpus Juris, pages 696, 699, sections 225, 228, the rule relating to the liability of lawyers for negligence is stated in these words: "An attorney must be held to undertake to use a reasonable degree of care and skill, and to possess to a reasonable extent the knowledge requisite to a proper performance of the duties of his profession. If injury results to the client as a proximate consequence of the want of such knowledge or skill, or from the failure to exercise such care, he must respond in damages to the extent of the injury sustained by his client. * * * An attorney is liable for all damage resulting to his client by reason of improper or erroneous advice where an attorney of reasonable knowledge and professional capacity, exercising ordinary care under the circumstances, would have avoided the error."

The termination of the leases as between the owners and the Hartman company, and the giving of the new leases to Radetsky, did not and could not, of itself, directly affect the right of the receiver or interfere with his

possession. Possession was not taken until after the court heard the receiver's petition for instructions relative to Radetsky's demand for possession, at which hearing it was tacitly understood that Radetsky should take possession, the court making it plain, however, that in going into possession, Radetsky would act at the risk of having his leases set aside later. As we have seen, Radetsky had the situation explained to him, and entered into possession and expended large sums of money with knowledge of the risk. Can we say that, as a matter of law, Montgomery was negligent in the matter of the leases and that his negligence proximately caused damage to Radetsky? In the receivership case, even the trial court, as stated above, was uncertain as to the rights of the parties under the leases. In the present case the trial court held that Montgomery was not guilty of actionable negligence in the matter of the leases. We do not feel that we would be justified in setting aside that finding.

2. It is contended by Radetsky's counsel that Montgomery was negligent in the matter of an execution sale of the personal property at the mine. The circumstances were these: On June 4, 1928, the court, upon application made by Montgomery in behalf of Radetsky, ordered that execution on the Radetsky judgment for $7,940.88 issue; that the sheriff take possession, jointly with the receiver, of the personal property of the Hartman company and sell the same to satisfy the judgment; that the sale be for cash; and that the cash be deposited in the registry of the court, to be held for disposition by order of the court in accordance with the rights of Radetsky, the receiver, and those having judgments against the Hartman company or the receiver. On June 30, the execution sale was held, Radetsky and Montgomery being present. What occurred between the two with reference to the amount to be bid is in dispute, but in view of the court's findings we are bound to take as true the testimony of Montgomery. He testified that he had told Ra-

detsky that in order to get title to the personal property, he would have to bid enough to cover the labor claims, which were preferred. They estimated the amount, including the money that Radetsky had advanced to the receiver, to be between $13,000 and $15,000. Montgomery had told Radetsky that he would have to bid that amount to be sure that there would be no further litigation in regard to it. At the time of the sale Radetsky declared that he would bid $1,600, whereupon Montgomery told him that to make such a bid would be extremely hazardous, and advised him to bid at least $8,000 or a little over, in addition to the receiver's certificates that he held, if he expected to get the mine and operate it without difficulty. Montgomery testified that he did not tell Radetsky that he would be safe in purchasing the property at the sale, but did tell him that if he bid enough to take care of the preferred claims, the likelihood was that he would obtain the property and no one would raise the question. Ignoring his attorney's advice, Radetsky ordered Montgomery to bid only $1,600, saying that he would not bid any more than he thought the property was worth as junk. Following his client's instructions, Montgomery bid $1,600 and the property was sold to Radetsky for that amount. In January, 1929, upon application of the receiver, the court set aside the execution sale. In August, 1929, the receiver sued Radetsky for damages for conversion of the personal property bought by him at the execution sale. The case never was brought to trial.

At about this time Radetsky discharged Montgomery and employed other attorneys. Upon the advice of his new attorneys, Radetsky, on December 9, 1929, made a settlement agreement with the receiver. The agreement, which was approved by the court, provided for the delivery to the receiver of the possession of the mine and equipment; the assignment to a bidder at the sale, to be ordered by the court, of the leases held by Radetsky and

his company; the delivery to the receiver of a bill of sale of the personal property bought by Radetsky at the execution sale; the mutual release of all claims, with certain exemptions; the return to Radetsky of the $1,600 bid by him at the execution sale and held in the registry of the court; the dismissal of all suits; and the allowance by the court to Radetsky of an unsecured claim in the sum of $25,000, subordinate to certain preferred claims. This agreement was performed by the parties.

While it is true that the personal property was in custodia legis and therefore not liable to execution levy and sale, the levy and sale were made under order of court; the purchase price ($1,600) was required to be, and was, paid in cash, which, pursuant to the court's order, was deposited in the registry of the court, and ultimately was returned to Radetsky under the settlement agreement, which, as we have seen, was approved by the court.

In the circumstances, the trial court was justified in holding that Montgomery was not guilty of actionable negligence in connection with the execution sale.

Counsel who represents Radetsky here was not his attorney in the trial court.

The judgment is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE HOLLAND concur.