UNITED STATES of America,
Plaintiff-Appellee,

v.

Harold J. BAER, Jr.,
Defendant-Appellant.

No. 77-1553.

United States Court of Appeals,
Tenth Circuit.

Submitted Feb. 16, 1978.

Decided April 17, 1978.

Rehearing Denied May 12, 1978.

Bryan Morgan, Denver, Colo. (Harold A. Haddon, Denver, Colo., on the brief), of Haddon & Morgan, Denver, Colo., for defendant-appellant.

Rod W. Snow, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Before BARRETT, BREITENSTEIN and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Harold J. Baer, Jr. (Baer) appeals from a finding of guilt and judgment rendered following trial to the District Court on a two-count Information charging him with illegal parking violations at the Denver Federal Center on November 4 and 26, 1976, in violation of 41 C.F.R. § 101–20 311(c) (1977) promulgated pursuant to 40 U.S.C.A. §§ 318a and 318c.

No challenges are raised on appeal relating to the sufficiency of the evidence, trial errors or the finding of guilt. Rather, the sole contention is that the sentence is so severe and excessive that it could only have been imposed in reprisal for Baer's election to have the matter heard before the United States District Court, rather than before the United States magistrate. Baer contends that this is evidenced by certain statements made by the court showing an attitude of vindictiveness.

Baer is employed by the United States Government as an attorney serving as a staff advisor in the Regional Office of the Department of the Interior with offices in the Denver Federal Center complex.

The trial commenced at 8:00 a. m. on May 16, 1977, and was heard that morning, continued over and concluded on the morning of May 19, 1977.

At the conclusion of the proceedings had the first day of trial and after the court had continued it over to 8:00 a. m. on May 19, 1977, Baer stated that he was to be in Pueblo, Colorado, that morning on official Government business. The court said: "You can get somebody else to handle your Pueblo matter. I cannot schedule this trial around your other commitment. After all, the usual place to try matters such as this is before the United States magistrate, and you are the one who elected to get it up

here in the district court, and we are going to have to treat it like a district court case. It was not our idea; it was yours." [R., Vol. II, pp. 32, 33.] Baer responded that the only reason he transferred the matter to the district court was because the case involved constitutional issues and he did not believe the magistrate's court was the proper place to present them. The district court thereupon observed that such matters can be handled by the magistrate with right of appeal. [R., Vol. II, p. 33.] The court concluded: "And you are the one who elected to put this parking matter up in this court with this court's present calendar. You are going to get a trial. It is going to be treated exactly like any other case in this court." [R., Vol. II, p. 33.]

Among the witnesses called by the Government during the course of the hearing were Howard M. Watts, a member of the Federal Protection Service, employed at the Center, who testified about the issuance of the citations on the two charged dates, the description of the foreign built Lancia vehicle illegally parked and the Colorado license plate thereon; John R. Little, Jr., Regional Solicitor, Denver Region, Department of the Interior, with offices in the Denver Federal Center and with whom Baer served as a staff member; Harold Chantker, a United States police officer assigned to the Federal Protective Service at the Center, who testified to photographs he had taken which were admitted in evidence, identifying the subject parking areas; Lewis Richardson, Investigator for the Colorado Department of Revenue, Motor Vehicle Division, who identified the Lancia vehicle and its license plate number as registered to Harold J. Baer and a driver's license application of Harold Julian Baer, Jr., all of which list the identical address of 1065 Logan, No. 207, Denver, Colorado; Albert V. Witham, Assistant Regional Solicitor, Department of the Interior, with offices in the Denver Federal Center, who testified to certain attendance records kept in the regular course of Government business which indicated Baer was paid for services at the Center on the two days involving the illegal parking charges.

Baer did not testify. However, he called John M. Hewins, an attorney in the office of the Regional Counsel, Region 8, General Services Administration, in an effort to obtain Hewins' interpretive opinion as to whether the regulation under which he (Baer) was charged is directed against the owner or the driver of a vehicle. [R., Vol. II, p. 29.] The court indicated that Hewins' expertise must be developed if the purpose of his testimony was that of explaining the regulation as written; however, if his testimony involved only the matter of "merely interpreting the regulation, that is for me to do." [R., Vol. II, p. 30.] Hewins acknowledged that he had not conducted any research into the particular regulation with which Baer was charged. The court observed that one cannot, as an agency expert, interpret a regulation which he has no knowledge of and of which he has not undertaken any research. Even so, the court stated that Hewins could, if he wanted to, express his individual interpretation or opinion without looking into the regulation and its background. The matter, however, was not pursued by Baer. [R., Vol. II, pp. 30, 31.]

At the conclusion of the hearing, Baer moved for judgment of acquittal on two grounds: First, that the government failed to prove it had jurisdiction inasmuch as "the Denver Federal Center is acquired land and there's no proof of cession by the State of Colorado of jurisdiction," and, second, that the Government failed to show beyond a reasonable doubt that he parked his vehicle on the two occasions charged or that he was even at the Denver Federal Center and that the regulation does not in anywise refer to a "traffic island." [R., Vol. III, pp. 17, 18.] The court rejected these arguments and denied the motion.

During the course of the second morning of trial, the court remarked to witness Little, Regional Solicitor for the Department of the Interior, that he [the court] was sure Little had important business to attend to but that " . . . we cannot permit people just to defy the court; so when they do, we just have to impose on people's time and

ask that you come, and I thank you for coming." [R., Vol. III, p. 16.]

Following all of the evidence and arguments, the court opined that the violations had been clearly established and that the parking had occurred in an area so clearly an unauthorized [parking] location that ". . . if a member of the bar, or a government lawyer doesn't think so, once more I'm going to take a long look at 18 United States Code, Section 4205." Baer responded that "It should make no difference, your Honor, whether a person is a member of the bar or not." The trial court rejoined: "Yes, it should. A member of the bar has a greater responsibility to respect the law . . . a member of the bar is presumed to have common sense. So I do think the fact that you are a member of the bar is important . . . Let me explain to you you're not being discriminated against. I think every judge when he has occasion to have a lawyer appear before him on a criminal case, be it income tax or any other type of case, holds the defendant to a higher standard simply because he has been given a license to practice law and is earning a living working for his government as a lawyer, I repeat, I apply a higher standard." [R., Vol. III, pp. 20, 21.] The trial court then reminded Baer of the "incident" which occurred at Baer's arraignment. The Information containing the parking charges was filed against one Harold Baer. When Baer appeared with counsel at arraignment, his counsel (at Baer's urging) stated that the defendant, Harold Baer, had not been in Colorado at the time of the offenses charged and was, in fact, then in Wisconsin. Prior thereto, Baer had informed the United States Attorney that he "had the wrong party." [R., Vol. III, p. 23.] The court stated that Baer's contention had created considerable concern, which was unjustified. The court observed that Baer's contention that the "wrong party" had been charged because the Information contained the "wrong name" was patently absurd because the suffix "Senior" or "Junior" added to a name is not part of the name, citing Baer to a number of legal authorities in support thereof. When the court inquired

of Baer if he had authority to the contrary, Baer acknowledged that he did not. The court then quoted from *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), for the proposition that it would verge on incompetence for a lawyer to file an initial pleading without researching such issues as jurisdiction, venue, standing, exhaustion of remedies, proper parties and types of relief. [R., Vol. III, p. 25.]

The trial court found Baer guilty beyond a doubt and ordered a presentence report. The court again acknowledged that one such as Baer has the right to by-pass the United States magistrate and bring his case directly to the federal district court but that the court was "really troubled by it." The court further remarked that because Baer is an attorney employed by the United States Government, his "handling" of this matter did not "make it easy" for the court to resolve the case.

Following submission of the presentence report, the sentencing hearing-proceeding was held on June 10, 1977. The court found that Baer was guilty of the parking violations beyond a reasonable doubt. The court then stated that Baer is "a lawyer, he is a member of the bar, he is an employee of the Federal Center [R., Vol. IV, p. 2.]; that when Baer filled out the presentence report he (Baer) ". . . mailed it in a Department of the Interior franked envelope, which happens to be something that 18 U.S.C. Section 1719 frowns on" [R., Vol. IV, p. 2.]; that Baer had represented, as an attorney, other "people before the United States magistrate in other parking cases, although he has withdrawn representation there . . . that . . . under 18 U.S.C., section 2005 [205] [it is] a felony for a government lawyer to appear against someone who's litigating with the government." [R., Vol. IV, pp. 2, 3.] None of these observations were challenged by Baer before the trial court, nor are they challenged on appeal.

Thereupon, Judgment and Probation Order was announced and thereafter formally entered. The court imposed sentences of thirty (30) days on each of the two counts,

to run consecutively, both of which were then suspended. Baer was thereupon placed on a two year period of probation. As a special condition during the first year of probation, Baer was not to operate his motor vehicle or one in which he has any interest or connection with on the premises of the Denver Federal Center. As a special condition during the second year of probation, Baer was not to be guilty of any intentional traffic offense at the Denver Federal Center. In addition, Baer was fined $50.00 on each count. In the usual or ordinary case involving such offenses, assuming that the issue of guilt is uncontested, the penalty would probably be a fine of some $5.00 for each violation.

As heretofore noted, the sole challenge presented by Baer on appeal relates to the severity of the sentence. Baer contends that the sentence constitutes an abuse of discretion. No contentions are advanced involving the serious constitutional issues which Baer once envisioned. No challenges are raised here relative to the validity of the parking regulations, the validity of the charging Information or the jurisdiction of the trial court; and no claim is made that the sentence imposed was in excess of that permitted by law.

### I.

The appellate court is not empowered to review sentences imposed within statutory limits. *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974); *United States v. Mackay*, 491 F.2d 616 (10th Cir. 1973), *cert. denied*, 416 U.S. 972, 94 S.Ct. 1996, 40 L.Ed.2d 560 (1974); *Haskins v. United States*, 433 F.2d 836 (10th Cir. 1970). Our criminal justice system recognizes that a sentencing judge has considerable leeway and discretion in determining, from the totality of the circumstances, the extent of the individual punishment to be meted out. *Andrus v. Turner*, 421 F.2d 290 (10th Cir. 1970). In that case this court rejected the contentions of some ten (10) habeas petitioners who had been jointly tried and convicted of issuing insufficient funds checks ranging in amounts from $5.00 to over $50.00 that their identical sentences constituted a denial of equal protection of the law and amounted to invidious discrimination under the Fourteenth Amendment to the United States Constitution. These contentions were put down on this basis:

The equal protection of the laws within the meaning of the Fourteenth Amendment does not require exact equality. *Norvell v. Illinois*, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963), reh. denied, 375 U.S. 870, 84 S.Ct. 27, 11 L.Ed.2d 99. It is only arbitrary and invidious discrimination that is condemned. *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). The imposition of a criminal sentence requires the exercise of judicial discretion by the sentencing judge, which includes consideration of all mitigating and aggravating circumstances relevant to the sentencing process. Identical punishment for like crimes is not required by the Fourteenth Amendment. *Williams v. Oklahoma*, 358 U.S. 576, 585, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959), reh. denied, 359 U.S. 956, 79 S.Ct. 737, 3 L.Ed.2d 763; *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), reh. denied, 337 U.S. 961, 69 S.Ct. 1529, 93 L.Ed. 1760, 338 U.S. 841, 70 S.Ct. 34, 94 L.Ed.2d 514. Broad discretion of the sentencing judge in many jurisdictions includes the power to impose an indeterminate sentence, together with the right to suspend sentence, or to grant probation to offenders in appropriate cases . . . . .

It is urged that the same sentence for all convicted of issuing insufficient funds checks, regardless of the amount thereof, is an unconstitutional discrimination even though the sentences were within the statutory limits. This is not a denial of equal protection of the laws, nor is it invidious discrimination between those charged with like crimes. "Undue leniency in one case does not transform reasonable punishment in another case to a cruel one." *Howard v. Fleming*, 191 U.S. 126 [24 S.Ct. 49, 48 L.Ed. 121] . . . . (1903). . . . .
421 F.2d, at 292.

Baer relies upon *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) and *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) for the rule that the sentence imposed upon him in the instant case was violative of his due process rights in that it was designed to discourage him from exercising his statutory right to request a trial before the United States District Court instead of the United States magistrate. In our view, the *Perry* and *Pearce* decisions are inapplicable on the facts; however, they do condemn vindictiveness by a sentencing court against one who exercises his right to challenge his original conviction (as in *Pearce, supra*) or one who exercises his statutory right to trial *de novo* following a misdemeanor conviction (as in *Perry, supra*).

In a recent opinion entitled *Bordenkircher v. Hayes,* reported in 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Supreme Court held that the due process clause of the Fourteenth Amendment is not violated when a state prosecutor carries out a threat made during the course of plea bargaining to have the accused reindicted on a more serious charge, i.e., the Kentucky Habitual Criminal Act, if the accused did not plead guilty to the offense with which he was originally charged. The court did not view this "give and take" in the "vindictiveness" sense of *Pearce, supra*, and *Perry, supra*. The court reasoned that those decisions stand for the rule that a person cannot be punished for doing that which the law plainly allows him to do (attacking his conviction), while the "give and take" of plea bargaining does not involve the same element of punishment because the accused is free to accept or reject the prosecution's offer. Even so, the court recognized that in reality the threat posed by the prosecutor did involve a definite deterrent effect on a defendant:

> While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' *Chaffin v. Styncheombe, supra*, 412 U.S. [17], at 31, [93 S.Ct.1977, 36 L.Ed.2d 714]. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forego his right to plead not guilty.

at 364, 98 S.Ct. at 668.

The *Bordenkircher, supra*, dissenters saw the case in the same light of the "realistic likelihood of vindictiveness" involved in *Pearce* and *Perry*.

■ We do not agree with Baer's contention that either the trial court's remarks contained in the record or the severity of the sentence imposed evidence vindictiveness. To be sure, the record reflects that the trial court was upset and disturbed with and by Baer, both at trial and during the sentencing proceedings. However, we do not view the court's statements or sentencing attitude as vindictive and/or in retaliation toward Baer because he elected to exercise statutory legal rights conferred upon him, i.e., to have the parking violation charges tried before the federal district court rather than before the United States magistrate. Rather, we view the trial court's remarks and the sentence imposed as a realistic recognition that Baer, given his position and station of life, abused the court and its processes. We concur in the trial court's observation that a licensed member of the bar, a practicing member of the legal profession and an attorney employed by the United States Government has a higher or greater responsibility to display respect for the law—which, we believe, encompasses the entire spectrum of our legal system. The trial court's observation was proper, correct and timely. *See* : *Radetsky v. Montgomery*, 94 Colo. 411, 30 P.2d 858 (1934); 1*Lewis v. Helm*, 40 Colo. 17, 90 P. 97 (1907).

It did not escape the notice of the trial court that Baer, while well aware that he was *in fact* the person charged with the parking violations set forth in the Information, nevertheless pursued an unprofessional type of "catch me if you can" contest during his arraignment when he attempted to hide behind the suffix "Jr." which follows his proper name. In our opinion, Baer's conduct in that regard is the more ridiculous (that is, his statement that the Harold Baer charged does not reside in Colorado) when we consider the undisputed testimony of Lewis Richardson, the Investigator for the Colorado Department of Revenue, Motor Vehicle Division: that the 1976 license plate registered to Baer's 1975 Lancia vehicle was listed in the name of Harold J. Baer of 1065 Logan, No. 207, Denver, Colorado, while his Colorado driver's license application was completed in the name of Harold Julian Baer, Jr., of 1065 Logan, No. 207, Denver, Colorado [R., Vol. II, pp. 14–16.] Such "gamesmanship" is inexcusable when practiced by any person. It is tragic when practiced by a member of the legal profession and an officer of the court.

It was, of course, Baer's argument before the trial court that his defense involved federal constitutional issues which he did not believe should be decided by a federal magistrate. Here again, the record is devoid of any cogent argument or legal authority relied upon by Baer evidencing that constitutional issues were in anywise involved. They failed to materialize at trial for purposes of adjudication. On the other side of the ledger, we observe, just as the trial court found, uncontested substantial evidence of *actual* violations by Baer of the parking regulations.

It was not lost upon the trial court—and it is not lost here—that Baer used a United States official franking [no postage paid by sender] envelope to mail his pre-sentence report and that he had represented other individuals charged with similar parking violations on the premises of the Denver Federal Center in proceedings prosecuted by the very Government by whom Baer is employed.

In light of the above factors and in recognition of the fact that the trial court alone is able to assess attitude, credibility and demeanor of those appearing before it, we hold that the record militates against Baer's contention that the sentence imposed evidences an abuse of discretion and vindictiveness in retaliation against him for asserting his right to trial before the district court. In our view, the matters above referred to were properly considered by the trial court in relation to Baer's attitude, demeanor, and good faith. The trial court alone was in a position to make these "value" assessments. The printed words in a "cold" record on appeal lend considerably less aid in evaluating demeanor and attitude than the actual, visual opportunity afforded the trial court.

The Canons of Judicial Ethics enjoin upon a federal judge the obligation to be industrious, prompt and efficient in the dispatch of the court's business; to perform his duties impartially, diligently and with dignity; to safeguard both the rights of the accused and the interests of the public in the administration of criminal justice; and to avoid the manifestation of hostility to a party, witness or attorney, yet criticizing and correcting unprofessional conduct.

In *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949), the Supreme Court observed that "Highly relevant—if not essential—to [a sentencing judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge . . . [have the] . . . opportunity to obtain pertinent information . . . ." *See also, Andrus v. Turner, supra.*

Strong remarks of a judge made after a determination of guilt of a defendant are not manifestations of prejudice where based upon the evidence and the record. A trial judge is not a mere moderator. He serves as a governor, obligated to

see that the law is properly administered. *Quercia v. United States*, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933). Part of the trial judge's obligation is to aid in ferreting out the truth in a fair and impartial manner. This mission was accomplished by the trial court in the case at bar. It matters not that in the process the court made remarks indicating impatience toward and/or criticism of Baer.

■ We conclude that the trial court did not act out of passion and prejudice. The sentence imposed does not, in light of the totality of the facts and circumstances, shock the conscience of this court. There was no denial of Baer's due process rights and the circumstances presented by the record do not show a gross abuse of discretion in the imposition of the sentence.

WE AFFIRM.

BREITENSTEIN, Circuit Judge, concurring in affirmance of judgment.

It would serve no good purpose for me to detail my differences with the separate opinions of Judges Barrett and Doyle. From my reading of the record and the briefs, I am convinced that appellant-defendant Baer received due process of law and that the sentence imposed did not result from gross abuse of discretion by the sentencing court. Accordingly, I would affirm.

WILLIAM E. DOYLE, Circuit Judge, dissenting.

I must dissent. My basic reason is that the sentence was grossly excessive and reflected the imposition of a sanction for the exercise by the appellant of a right granted by Congressional Act to try the matter before a federal judge.

The question is whether the court disapproved of the appellant's bringing the case before him and imposed a sentence to insure that the election to go before a federal judge in a parking ticket case would not become a regular procedure. The exasperation of the court is reflected in the statement which was addressed to the appellant at the conclusion of the evidence. On finding the defendant guilty, the judge stated:

I have absolutely no understanding of why the defendant on March 25, 1977, wrote to the United States Magistrate [electing trial before the district court.]

I confess that he has a right to do that.

. . .

And when it is done, obviously, the defendant wishes to have the case treated as a case of somewhat more importance than forfeiture of collateral . . . . .

He can choose to take up the time of this Court and to take up the time of the government employees who have had to participate in this, and that's his right. He can elect not to pay the parking ticket, which normally other people would pay.

Moreover, the court took the unheard of step (in a parking ticket case) of having a presentence investigation. This is extensive machinery that was activated. As a result of the report given, it was brought to his attention that there were certain collateral matters, including the fact that the defendant was a lawyer and had represented fellow workers in parking ticket cases before, and, further, that he had mailed some part of the presentence report in a government franked envelope. Another evidence of the court's overreaction in pronouncing sentence is the sentence itself. A fine of $50.00 on each of the two offenses was assessed. In addition, the appellant was sentenced to 30 days in prison for each parking ticket, these to be served consecutively. This was the maximum penalty allowed by 40 U.S.C. § 318c. The imprisonment was suspended and defendant was placed on probation for consecutive terms of one year on each ticket.

There were additional conditions. During the first year defendant was not to operate his vehicle on the land of the Denver Federal Center, and no vehicle owned by him was to be driven by anyone on the Denver Federal Center grounds. In view of the fact that these were $5.00 parking tickets, the sanctions were severe indeed.

The legal principle involved is that which prohibits the pronouncement of a vindictive sentence against the defendant where the defendant has merely exercised a legal right. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). There the Supreme Court held that because of the possibility of vindictiveness in this kind of situation, the trial court must clearly state its reason any time a more severe sentence is imposed following the grant of a new trial. This is so that the court refrains from punishing the individual for appealing his conviction.

Similarly, in *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the defendant appealed a misdemeanor conviction for which he had received a six-month sentence. The accused had exercised his statutory right to a trial de novo in a higher court. The prosecutor had then obtained a felony indictment based on the same set of facts. Defendant was convicted and sentenced to five to seven years imprisonment. The Supreme Court ruled that the indictment for the more serious charge violated the *Pearce* rule since it discouraged defendant from invoking his statutory rights.

The case of *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978), does not undermine either *Pearce* or *Blackledge*. There it was held that a threat by the district attorney to an accused in the course of plea bargaining, which threat was subsequently carried out, was not invalid within the standards of *Blackledge* or *Pearce*.

This writer sympathizes with the district court's concern with having to try parking ticket cases. However, the fact that the appellant here brought his case into federal court is no indication that others would follow this practice. If nothing else, most people's common sense would preclude this.

Regardless, though, of whether the average man may conclude that appellant used bad judgment does not justify the sanction. The Supreme Court has held that it is not permissible to impose an excessive sentence in order to discourage such a possibility.

Congress has provided for such trials to be before federal judges and it is something which the judges must tolerate, and extra judicial means are not to be employed to discourage the exercise of these rights.

This writer shares Judge Winner's failure to understand the appellant's exercising the option to go to federal court, but undoubtedly he, the appellant, has learned his lesson and will not pursue such a remedy in the future.

In final analysis, Judge Winner may take a different view of this sentence following receipt of the mandate. He, of course, is aware that Rule 35 of the Federal Rules of Criminal Procedure empowers him to modify the sentence at any time within 120 days after the mandate of this court is received by him. I predict that he will at least consider such a course of action.