WILLIAMS *v.* OKLAHOMA.

No. 124.   Argued January 21, 1959.—Decided February 24, 1959.

*John A. Ladner, Jr.* filed a brief and argued the cause, *pro hac vice,* by special leave of the Court, for petitioner.

*Mac Q. Williamson,* Attorney General of Oklahoma, and *Sam H. Lattimore,* Assistant Attorney General, argued the cause and filed a brief for respondent.

MR. JUSTICE WHITTAKER delivered the opinion of the Court.

Upon his plea of guilty to a charge of kidnaping in the District Court of Tulsa County, Oklahoma, petitioner was sentenced to death. On appeal, the Criminal Court of Appeals of Oklahoma affirmed, 321 P. 2d 990, and certiorari was sought on the ground that the sentence was imposed in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. We granted the writ to determine that question. 357 U. S. 925.

The undisputed facts are that on June 17, 1956, within a few hours after robbing a filling station attendant in Tulsa, Oklahoma, and eluding police in an ensuing chase, petitioner forced his way into an automobile being driven by one Tommy Cooke, a young divinity student, as it stopped for a traffic light in that city, and, at gunpoint, forced Cooke to drive beyond the City and County of Tulsa and for a considerable distance through northeastern

Oklahoma to a point on a dead-end road in Muskogee County where he shot and killed him, and then escaped in the car. On June 19, 1956, petitioner was apprehended, and soon afterward he was charged in the District Court of Muskogee County with murdering Cooke in that county. On arraignment, he entered a plea of not guilty, but during the course of his trial petitioner, on November 19, 1956, withdrew that plea and entered a plea of guilty as charged. He was thereupon convicted and sentenced to life imprisonment in the Oklahoma State Penitentiary.[1]

Thereafter, on December 17, 1956, petitioner was charged in the District Court of Tulsa County with kidnaping Cooke in that county on June 17, 1956, in violation of Okla. Stat., 1951, Tit. 21, § 745.[2] At his arraignment on December 19, 1956, petitioner entered a plea of not guilty, but on January 30, 1957, a few days before the scheduled date of trial, he withdrew that plea and entered a plea of guilty as charged. After interrogating petitioner to make sure that he had entered the plea of guilty voluntarily and that he understood that he might be sentenced to death upon it,[3] the court accepted the plea

---

[1] Okla. Stat., 1951, Tit. 21, § 707, provides, in pertinent part: "Every person convicted of murder shall suffer death, or imprisonment at hard labor in the State penitentiary for life, at the discretion of the jury, [but] upon a plea of guilty the Court shall determine the [punishment]."

[2] Okla. Stat., 1951, Tit. 21, § 745, provides, in pertinent part, that "Every person who, without lawful authority, forcibly seizes and confines another, or inveigles or kidnaps another, for the purpose of extorting any money, property or thing of value or advantage from the person so seized . . . , or in any manner threatens [the person so seized] shall be guilty of a felony, and upon conviction shall suffer death or imprisonment in the penitentiary, not less than ten years."

[3] The court's interrogation and petitioner's answers were as follows:

"The COURT: [T]he Court is advised by the assistant County Attorney and also by your counsel, that at this time you wish to withdraw your plea of not guilty, which has heretofore been entered

and adjudged petitioner guilty of the crime of kidnaping Cooke as charged. Thereupon the court asked counsel for petitioner if he wished to be heard regarding the sentence to be imposed, and counsel replied that he preferred to reserve his statement until after the State's Attorney had spoken. The State's Attorney then made a statement—reading much of it from a prepared statement—recounting the armed robbery of the filling station attendant and the following chase by and elusion of the Tulsa police; reciting the gruesome details of the kidnaping of Cooke in Tulsa County and of his murder in Muskogee County; stating petitioner's past criminal record as shown

---

in this case, wherein you are charged with the crime of kidnapping, and enter a plea of guilty to this charge—

"Mr. WILLIAMS: Yes, sir.

"The COURT: —is that correct?

"Mr. WILLIAMS: Yes, sir.

"The COURT: Now, you understand the nature of this charge, do you?

"Mr. WILLIAMS: That's right.

"The COURT: You understand, that it is a charge that is punishable with the extreme penalty of life imprisonment, or death in the electric chair?

"Mr. WILLIAMS: Yes, sir.

"The COURT: In the light of that knowledge and information and understanding, are you entering this plea freely and voluntarily upon your part?

"Mr. WILLIAMS: Yes, sir.

"The COURT: Has there been any representation made to you by counsel, or by anyone else, as to the sentence which you might expect from the Court in this case?

"Mr. WILLIAMS: I was told I could expect the maximum.

"The COURT: Of death in the electric chair?

"Mr. WILLIAMS: Yes, sir.

"The COURT: In the light of that representation made to you by your counsel, you wish to withdraw your plea of not guilty and enter a plea of guilty to the charge?

"Mr WILLIAMS: Yes, sir."

by the files of the Federal Bureau of Investigation; [4] and concluding with a request for a death sentence. Counsel for petitioner objected to any reference to the murder on the ground that sentence for that crime had already been imposed by the District Court of Muskogee County and that it could not again lawfully be considered in imposing sentence on the kidnaping charge. The court, expressing the view that it was "proper to advise the Court of all the facts [occurring while petitioner] had the victim in his charge and under his control," overruled the objection. After the State's Attorney had concluded, counsel for petitioner put in evidence a transcript of the sentencing proceedings had in the District Court of Muskogee County in the murder case, and made an extended plea for a sentence to life imprisonment rather than a sentence to death.

After thus fully hearing the parties, the court deferred the imposition of sentence for two days. Upon reconvening, the court called petitioner to the bar and asked him whether he wished to make any correction in the statement that had been made to the court by the State's Attorney. Petitioner answered that he did not, and that the matters related in that statement were true.[5] There-

---

[4] As recited by the State's Attorney, the FBI files disclosed the commission of five crimes by petitioner, consisting of grand theft in 1944, at the age of 14, resulting in his release to a juvenile bureau; a Dyer Act violation in 1945, resulting in a three-year sentence to the federal juvenile correctional institution at Inglewood, Colorado; escape from Inglewood and a Dyer Act violation in 1947, resulting in a sentence for a term of 18 months; and armed robbery in 1949, resulting in a sentence for a term of 12 years in the Indiana State Penitentiary.

[5] The court's questions and petitioner's answers were as follows:

"The COURT: Now, at that time on Wednesday, there was a statement of facts made by the State, relative to this case, and the sequence of events and the facts surrounding the sequence of events and the facts surrounding the commission of this crime. Do you have any

upon, the court sentenced petitioner to death, and in the course of his pronouncement the judge said, among other things, that he had considered the facts "which [had] been stated [by counsel] and which [petitioner had] admitted were [involved in] this crime [of kidnaping], committed in Tulsa County, which resulted in the murder of the victim, [all of] which the Court takes into consideration . . . as a continuing thing."

As stated, petitioner's broad claim is that these proceedings show that the death sentence was determined and imposed in violation of the Due Process Clause of the Fourteenth Amendment. In support of that position he makes, and variously repeats, a number of arguments which upon analysis come down to three contentions: first, that the trial court violated the presentence procedure prescribed by Okla. Stat., 1951, Tit. 22, §§ 973, 974 and 975, in permitting the State's Attorney to make an unsworn statement to the court of the details of the crime and of petitioner's criminal record, and that this also denied to him the rights of confrontation and cross-examination; second, that the court in taking the murder into consideration in imposing sentence on the kidnaping charge punished him a second time for the same offense; and, third, that in any event the sentence to death for kidnaping was "disproportionate" to that crime and to

---

correction to make in reference to the statement of counsel for the State, in that regard?

"Mr. WILLIAMS: No, sir.

"The COURT: Those facts were true?

"Mr. WILLIAMS: Yes, sir.

"The COURT: And you at this time admit that they were true and that you committed the acts as set forth by the State, that is correct, is it?

"Mr. WILLIAMS: Yes, sir.

"The COURT [addressing counsel for petitioner]: All right. Do you have anything further to say on behalf of this defendant?

"[COUNSEL FOR PETITIONER]: Nothing further."

the life sentence that had earlier been imposed upon him for the "ultimate" crime of murder.

Petitioner's contentions that the trial court deprived him of his legal rights and of fundamental fairness in failing to pursue the formal presentence procedures prescribed by Okla. Stat., 1951, Tit. 22, §§ 973, 974 and 975, and in permitting the State's Attorney to make an unsworn statement to the court of the details of the crime and of petitioner's criminal record were also made by petitioner in the Criminal Court of Appeals of Oklahoma. That court rejected those contentions. Sections 973–975 provide in substance that after a plea or verdict of guilty in a case where the extent of the punishment is left with the court, the court, upon the suggestion of either party that there are circumstances which may be properly taken into view, either in aggravation or mitigation of the punishment, may, in its discretion, hold a formal hearing and take evidence thereon.[6] The Oklahoma court held that whether those procedures shall be used is discretionary with the trial court, and that, at all events, petitioner waived their use by failing to request a hearing under those statutes. In construing those statutes it said: "But, two things are clear under the provisions of § 973. First,

---

[6] Sections 973, 974 and 975, Okla. Stat., 1951, Tit. 22, provide:

§ 973. "After a plea or verdict of guilty in a case where the extent of the punishment is left with the court, the court, upon the suggestion of either party that there are circumstances which may be properly taken into view, either in aggravation or mitigation of the punishment, may in its discretion hear the same summarily at a specified time and upon such notice to the adverse party as it may direct."

§ 974. "The circumstances must be presented by the testimony of witnesses examined in open court. . . ."

§ 975. "No affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court or member thereof in aggravation or mitigation of the punishment, except as provided in the last two sections."

pursuing this method of procedure is a matter of the trial court's sound discretion. Second, its use is further contingent upon the request of either the state or the defendant." It further said: "It is contended that under the provisions of § 975 it is the mandatory duty of the court to hear witnesses. But, in construing §§ 974 and 975 in light of the provisions of § 973, we are of the opinion that both the provisions of § 974 and § 975 are contingent upon the request for evidence under the provisions of § 973, [and that] [w]hen the parties fail to make a request for the privilege thereof, the same is waived and some other method of supplying the court with the necessary information for the pronouncement of judgment and sentence may be substituted instead." This construction of the State's statutes by its court of last resort must be accepted here.

It is not contended that petitioner requested or suggested that the trial court hear evidence in mitigation of the sentence. Nor did petitioner request or suggest that the court require the State to offer evidence in support of the aggravating circumstances. In these circumstances, we cannot say that petitioner was deprived of any right or of fundamental fairness by the fact that the trial court did not pursue the presentencing procedures prescribed by the Oklahoma statutes.

Nor did the State's Attorney's statement of the details of the crime and of petitioner's criminal record deprive petitioner of fundamental fairness or of any right of confrontation or cross-examination. As we have seen, the Court of Criminal Appeals of Oklahoma held in this case that when petitioner failed to request the privilege of adducing evidence in mitigation of the crime, and thereby waived the presentence procedures prescribed by §§ 973–975, the law of Oklahoma authorized "some other method of supplying the court with the necessary information for the pronouncement of judgment and sentence [to] be

substituted instead," and it held that the State's Attorney's statement was a proper method in these circumstances under the law of Oklahoma. Moreover, after the State's Attorney had made his statement, petitioner, upon interrogation by the court, stated that the recitals of that statement were true. See Note 5. This alone should be a complete answer to the contention. But we go on to consider this Court's opinion in *Williams* v. *New York,* 337 U. S. 241. This Court there dealt with very similar contentions and held that, once the guilt of the accused has been properly established, the sentencing judge, in determining the kind and extent of punishment to be imposed, is not restricted to evidence derived from the examination and cross-examination of witnesses in open court but may, consistently with the Due Process Clause of the Fourteenth Amendment, consider responsible unsworn or "out-of-court" information relative to the circumstances of the crime and to the convicted person's life and characteristics.

These considerations make it clear that the State's Attorney's statement of the details of the crime and of petitioner's criminal record—all admitted by petitioner to be true—did not deprive petitioner of fundamental fairness or of any right of confrontation or cross-examination.

We come now to petitioner's contention that the court in taking the murder into consideration in imposing sentence on the kidnaping charge punished him a second time for the same offense. But murder and kidnaping are not the same offense in Oklahoma. The Oklahoma statutes separately create and define the crimes of murder [7] and

---

[7] Okla. Stat., 1951, Tit. 21, § 701, provides:

"Homicide is murder in the following cases.

"1. When perpetrated without authority of law, and with a premeditated design to effect the death of the person killed, or of any other human being.

"2. When perpetrated by any act imminently dangerous to others

of kidnaping,[8] and it is evident from their terms that, as held by the Oklahoma court in this case, they create "separate and distinct offenses." It is not contended that the charge of murder to which petitioner pleaded guilty and was sentenced in Muskogee County made any reference to the crime of kidnaping, and the charge involved in this case made no reference to the murder but was substantially in the language of the kidnaping statute. See Note 2. Petitioner did not object to the charge in the trial court on double jeopardy or double punishment grounds as the Oklahoma courts have held to be necessary to preserve such a point,[9] but instead he entered a plea of guilty to the charge. Upon that plea it became the duty of the trial judge to impose an appropriate sentence. The statute made appropriate, and required the imposition of, a sentence within the range of imprisonment for a term of 10 years to the maximum of death (see Note 2), as determined by the sentencing judge in the exercise of his sound discretion. Necessarily, the exercise of a sound discretion in such a case required consideration of all the circumstances of the crime, for "[t]he belief no longer prevails that every offense in a like legal category calls for an identical punishment. . . ." *Williams* v. *New York, supra,* at 247. In discharging his duty of imposing a proper sentence, the sentencing judge is authorized, if not required, to consider all of the mitigating and aggravating circumstances involved in the crime. The Okla-

---

and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual.

"3. When perpetrated without any design to effect death by a person engaged in the commission of any felony."

[8] See Note 2.

[9] *Collins* v. *State,* 70 Okla. Crim. 340, 106 P. 2d 273; *Mowels* v. *State,* 52 Okla. Crim. 193, 11 P. 2d 205; *Ex parte Zeligson,* 47 Okla. Crim. 45, 287 P. 731; *Fines* v. *State,* 32 Okla. Crim. 304, 240 P. 1079; *White* v. *State,* 23 Okla. Crim. 198, 214 P. 202.

homa court has so declared in this case and in *Powell* v. *State,* 94 Okla. Crim. 1, 229 P. 2d 230. This Court, too, has so held. *Williams* v. *New York, supra.* Certainly one of the aggravating circumstances involved in this kidnaping crime was the fact that petitioner shot and killed the victim in the course of its commission. We cannot say that the sentencing judge was not entitled to consider that circumstance, along with all the other circumstances involved, in determining the proper sentence to be imposed for the kidnaping crime. And in view of the obvious fact that, under the law of Oklahoma, kidnaping is a separate crime, entirely distinct from the crime of murder, the court's consideration of the murder as a circumstance involved in the kidnaping crime cannot be said to have resulted in punishing petitioner a second time for the same offense, nor to have denied to him due process of law in violation of the Fourteenth Amendment.

Petitioner's further claim that the sentence to death for kidnaping was "disproportionate" to that crime and to the life sentence that had earlier been imposed upon him for the "ultimate" crime of murder proceeds on the basis that the sentence for kidnaping was excessive, that the murder was the greater offense, and that the sentence for the lesser crime of kidnaping ought not, in conscience and with due regard for fundamental fairness, exceed the life sentence that was imposed in another jurisdiction for the murder. But the Due Process Clause of the Fourteenth Amendment does not, nor does anything in the Constitution, require a State to fix or impose any particular penalty for any crime it may define or to impose the same or "proportionate" sentences for separate and independent crimes. Therefore we cannot say that the sentence to death for the kidnaping, which was within the range of punishments authorized for that crime by the law of the State, denied to petitioner due process of

law or any other constitutional right. Nor, in view of the fact that kidnaping and murder are separate and independent offenses in Oklahoma, is there any merit in petitioner's collateral claim that what he calls "the lesser crime" of kidnaping "merged" in what he calls "the greater crime" of murder and that the sentence to life imprisonment for the murder was a bar to the imposition of any sentence for the kidnaping, or at least to any greater sentence than was imposed for the murder, and that imposition of a death sentence for the kidnaping deprived him of due process in violation of the Fourteenth Amendment.

We have now treated with all of petitioner's claims, and failing to find any deprivation by the Oklahoma courts of any of his fundamental rights, we must hold that petitioner was not denied due process of law.

*Affirmed.*

MR. JUSTICE DOUGLAS, being of the view that petitioner was in substance tried for murder twice in violation of the guarantee against double jeopardy, dissents.