Kurt M. Winnings was convicted in the circuit court of Walker County, Alabama for violating the Alabama Controlled Substances Act. An application for probation was filed and sentencing was postponed. At a subsequent hearing, probation was denied and the appellant was sentenced to six years imprisonment. Appellant gave notice of appeal after a motion for a new trial was denied by the trial court. The appeal is now before this court for review and appellant has been provided with a free transcript and appointed counsel.
From the transcript at trial the pertinent facts appear as follows:
On June 1, 1977, Agents Bill Ingram and Gerald Courington, both employees of the Alabama Alcohol Beverage Control and Drug Division, located a box in the woods, just off "Whittimore Road" in Walker County, Alabama. According to Agent Ingram, the box "was in the woods there and nothing to conceal it." Inside the box was a "brick or block type of" substance which appeared to be marijuana. Nothing else was in the box other than the "white like paper" and the newspaper that the block was wrapped in. Ingram added that the box was along "a well worn path."
After locating the marijuana, Ingram and Courington returned to the Walker County Sheriff's office, where they contacted Deputies Binkley and Guthrie.
Ingram and Guthrie returned to the box "a little after four," found it to be in substantially the same condition it had been in when they originally discovered it, and walked back toward Whittimore Road. Upon reaching the road, they saw a 1964, white Dodge automobile, containing three people, come to a stop, and the appellant, Kurt Winnings, get out of the car. At that point, Winnings was about thirty steps from them and approximately twenty-five steps from the box containing the marijuana, according to Ingram.
Ingram testified that Winnings went to the box and opened it.
 "I could see him putting something in what appeared to be a bowl-type container and then I could see him holding up a plastic bag in this manner (indicating) *Page 325 
looking at it and he turned it as I was looking at it. I couldn't tell what was in the bag, just that it was a plastic bag."
Winnings stayed at the box approximately seven minutes and left carrying the bowl.
When the appellant started back toward the road, the vehicle containing the other two people returned, "blowed one time," and Winnings got in. Ingram stated that the car contained the same two people who were in it when Winnings got out.
According to Ingram, Agent Guthrie then radioed the two deputies to stop the vehicle. Ingram returned to the box and found that the "marijuana block" was not there, and that the white paper surrounding the block was on the ground outside of the box. There were three plastic bags with an amount of green substance in them in the box. Ingram testified that he took possession of the box and stored it in the safe located in the Walker County Sheriff's office. Later, he turned over the contents of the box to the State toxicologist in Birmingham, Alabama.
Joel Guthrie, an investigator with the Walker County Sheriff's Department, testified to substantially the same facts outlined in Ingram's testimony. According to Guthrie, on the day in question the four officers involved in the investigation had driven to the area where the box was located, and Agents Guthrie and Ingram got out of the car and walked to the location of the box. Officers Courington and Binkley drove a short distance down the road and turned onto a side road.
Subsequently, while waiting on the edge of the wooded area Guthrie said he saw a four-door, white Dodge, with a Tennessee license plate on the front, coming down the road. The car stopped at the edge of the road just above where he and Ingram were waiting.
Guthrie saw three people in the car and saw one of the occupants, the appellant, get out. Guthrie testified that he saw the appellant go to the box and remain there for about ten minutes. Appellant opened the lid on the box and began "doing something down inside the box." After approximately ten minutes, the car returned, blew its horn, and appellant closed the box and made his way back to the road. Appellant got into the car and the car drove away. Guthrie said that, at that point he radioed Courington and Binkley and told them to "stop the car and check it out."
Guthrie recalled that, after he placed the radio call to Deputies Courington and Binkley, all four officers drove to the appellant's home where they saw the white Dodge automobile parked. Guthrie also stated that the automobile had a Tennessee license plate on the front and a Louisiana tag on the back. The officers found three people in appellant's home, one of whom was the appellant. At that point, the appellant was placed under arrest.
Gerald Courington testified that, on June 1, 1977, while conducting an investigation with officers of the Walker County Sheriff's Department, he and three other officers drove to an area known as "Curry," where Agents Guthrie and Ingram got out of the car. He and Deputy Binkley drove down the road for a quarter of a mile and "pulled off on an old log road."
According to Courington, they were in communication with Guthrie and Ingram by radio and they had remained parked at that location for approximately twenty minutes when they were called on the radio. Courington stated that they were asked to stop a white Dodge with a Louisiana tag. He said that he and Binkley returned to the main road, and that, when they first saw the other car, they were about one hundred yards behind it. Courington, who was driving, turned the "blue light" on, and the Dodge stopped about "150 yards on down the road."
Courington observed three people in the car at the time, and, when he turned his blue light on, he saw someone sitting on the right side of the car next to the driver hold a "white bowl out the window . . . sideways."
The driver of the automobile was a Mr. Bennett; a young lady was sitting in the center of the front seat; and the appellant *Page 326 
was sitting on the passenger side. According to the officer's testimony, the bowl was held out of the car window on the appellant's side of the vehicle.
Courington testified that the three people were searched when the automobile was stopped but that he did not find anything in the car "that we could determine what it was." He did not place the appellant under arrest at the time because "I didn't have evidence at that time to place him under arrest."
According to Courington, they then "went back up to pick up Guthrie and Ingram." Agents Guthrie and Ingram informed him of what they had seen, and the four officers went to the appellant's home.
Bunny Cottrell, Chief Deputy Sheriff of Walker County, testified that the key to the box found by the officers had been left for safekeeping in his desk drawer. According to Cottrell, the drawer was normally locked, and Deputy Guthrie also had a key to the drawer. Cottrell was unable to state definitely whether the drawer was locked or unlocked at any particular time because, he explained, on an average day, "forty or fifty" people were in and out of the sheriff's office. He also testified that the vault in which the box was kept often remained open during the day, and that approximately fifteen people employed by the sheriff's department knew the combination to the vault.
Arthur Craig Bailey testified that he was an employee of the State Department of Toxicology in criminal investigation, and was assigned to the Birmingham office. He stated that he was familiar with the testing procedures for identifying marijuana, and that he had analyzed substances alleged to be marijuana on "many occasions." Bailey explained that, in following accepted testing procedures for marijuana, he normally conducted two tests, and testified that he had conducted two tests on the substances turned over to him in the present case.
According to Bailey's testimony, on July 26, 1977, Officer Ingram, of the Walker County Sheriff's Department, submitted two plastic bags containing material alleged to be marijuana to the toxicology office for examination. Bailey stated that the results of this examination were "positive" and that, in his opinion, the material was marijuana.
Bailey testified, over defense counsel's objection, that on the morning of the trial he had performed another test on some of the same material turned over to him by Ingram. The results of that test were also positive, and it was his opinion that the substance was marijuana.
On further questioning, Bailey stated that the substance turned over to him weighed approximately 364.5 grams or a little over thirteen ounces. It was his judgment that this amount of marijuana could be purchased for about one-hundred and fifty to two-hundred and fifty dollars "on the streets." He stated that he did not run a test on the material turned over to him to determine the presence of tetrahydrocannabinol, hereinafter, THC.
During cross-examination, Bailey testified that THC was a "common constituent of marijuana" and, "in the cases I have analyzed for, it has been found, yes, sir." He also stated that he did not know of any marijuana that did not contain THC or, was not hallucinogenic.
At the conclusion of the State's case, defense counsel made a motion to exclude the State's evidence on the grounds that the appellant was charged with possession of marijuana, which encompassed the possession of THC, because of the spelling of the word marijuana. Appellant asserted that THC is the controlled substance whose possession is proscribed by the Alabama Controlled Substances Act.
The motion to exclude was overruled and defense counsel then made a motion for mistrial, based on the fact that the State, in its opening statement, had indicated to the jury that the officers found marijuana in appellant's possession. This motion was also overruled by the trial court.
Kurt Winnings, the appellant, took the stand as the only defense witness and testified *Page 327 
that the box in question was his and that the substance in the box also belonged to him. He acknowledged that on the date in question he did carry a bowl to the site where the box was located and that he did put a small portion of marijuana in it. He denied having any plastic bags or doing anything with plastic bags at the location of the box.
According to appellant, during the trip to his home, about one-half mile away, he admitted emptying the bowl out of the car window. He knew the police were behind him and that he "wasn't suppose to have it." He stated that he had acquired the marijuana in exchange for some work, and that it was for his personal use.
 I
The appellant insists that the trial court erred in refusing to grant his motion for a mistrial after the State failed to prove the presence of marijuana in his automobile. He points out that the prosecuting attorney had claimed, in his opening statement to the jury, that law enforcement officers found "traces of marijuana in the [appellant's] car," and that in failing to show this through the evidence presented, the State had provided grounds for a mistrial.
From the transcript, the portion of the prosecuting statements to which objections and exceptions were taken, reads as follows:
 "MR. THORNLEY: We expect the evidence to show that the defendant had taken a bowl out to the marijuana and was sitting on the right hand passenger side of the front seat, that during the time they were pursuing them, we expect the evidence to show that they held the evidence out the window, that when the officers stopped them that there was no mari — that they found only traces of marijuana in the car.
 "MR. NICHOLSON: Your Honor, we would like to object at this time and move for a mistrial on the basis that it is my understanding of the evidence in this case will not show that any marijuana was found in the automobile whatsoever and in the event the State fails to prove that, we move for a mistrial.
 "THE COURT: Well, we will cross that bridge when we get to it. Be careful — all of you — be careful in stating what you expect the evidence to show. Ladies and gentlemen of the jury, the purpose of the opening statement is to tell you what he expects the evidence to show. If for some reason the evidence doesn't show that, then you will not consider that evidence at all. But we will cross those bridges when we get to them."
The scope and latitude of counsel's opening statement are matters addressed to the trial court's discretion, and such ruling will not be disturbed on appeal without a showing of abuse. Hooks v. State, 45 Ala. App. 221, 228 So.2d 833.
Whether a mistrial should be granted is also a matter directed to the sound discretion of the presiding judge, and he has been given wide latitude in such matters. He is in the best position to observe the effect of such utterances on the jury and to determine whether or not they are harmful or prejudicial to the rights of the defendant. Ballard v. State, 51 Ala. App. 393, 286 So.2d 68.
For support of his contention of error in the trial court's ruling, appellant relies on Stennett v. State, Ala.Cr.App.,340 So.2d 67. In that case, the State's attorney, in his opening statement, in a prosecution for unlawful sale of amobarbital, stated that the case was "about the defendant selling marijuana." The defendant's motion for a mistrial was overruled without any clarifying instructions by the trial judge.
There, the ruling by this court stated that, without such clarifying instructions or polling of the jury, such comment was ineradicable and constituted prejudicial error. Stennett v.State, supra, at p. 68.
The facts in Stennett are clearly distinguishable from those presently before the court. In the instant case, the trial judge gave clarifying instructions to the jury, as can be seen from the foregoing *Page 328 
paragraphs. In addition, he gave the following curative instruction:
 "If for some reason the evidence doesn't show [what the district attorney stated he expects it to show], then you will not consider that evidence at all."
The trial judge, the authority best situated to determine its effect, heard the opening statement by the district attorney, and it was his opinion that the remark was not harmful or prejudicial to the rights of the appellant. Under these facts, his judgment in this matter should not be disturbed.
 II
The appellant contends that the trial court erred in refusing to grant his motion to exclude the State's evidence and his motion for a new trial. He maintains that the State failed to prove that the material in question contained the incriminating ingredient, tetrahydrocannabinol, (THC).
From the record we find that an employee of the Alabama Department of Toxicology testified that he had examined the substance turned over to him by Officer Ingram, by conducting an analysis consisting of two tests, and that the results indicated that the substance was marijuana.
This court stated in Radney v. State, 342 So.2d 942:
 "Once . . . the toxicologist employing his testing procedures, concluded that the questioned substance was marijuana, no proof of the tetrahydrocannabinol content was necessary. It was a question for the jury to weigh his testimony and find with him if they so desire."
In the present case, the substance tested by the toxicologist was positively identified as marijuana, and, under the rationale in Radney v. State, supra, no proof of THC content was necessary. Therefore, the trial court's failure to grant the defense motion to exclude and its later motion for a new trial was not error.
 III
Finally, appellant maintains that, prior to sentencing, the trial court obtained information on a "social basis and from witnesses not in court" which affected the denial of probation. Appellant complains that he was denied the right to cross examine the witnesses from whom this information was obtained.
However, from the transcript of the probation hearing, it appears that the information referred to as that given on a "social basis" was information obtained by a State probation officer, not by the trial judge. Information used by the probation officer as the basis of the presentence report came from the same individuals alleged to have also talked with the trial judge. All of this information was revealed to the appellant at a probation hearing prior to sentencing and he had an opportunity at that time to cross examine the probation officer.
The United States Supreme Court in Williams v. Oklahoma,358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516, referring to the ruling in Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079,93 L.Ed. 1337, stated:
 "[O]nce the guilt of the accused has been properly established, the sentencing judge, in determining the kind and extent of punishment to be imposed, is not restricted to evidence derived from the examination of witnesses in open court but may, consistently with the Due Process Clause of the Fourteenth Amendment, consider responsible unsworn or `out-of-court' information relative to the circumstances of the crime and to the convicted person's life and characteristics."
Further, in United States v. Jones, 5 Cir., 473 F.2d 293, cert. den. 411 U.S. 984, 93 S.Ct. 2280, 36 L.Ed.2d 961, the United States Court of Appeals for the Fifth Circuit, in affirming a decision from the middle district of Alabama, stated:
 "Reliance by the court on undisclosed presentence information is not constitutionally proscribed, Williams v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959);" [Further citations omitted].
The court went on to say that when the errors in the pre-sentence report "surfaced the trial court inquired into them and accepted *Page 329 
defendant's corrections, and only then was sentence imposed."U.S. v. Jones, supra.
In the present case the information concerning appellant, which was given to the trial judge, was also given to the probation officer, and during the probation hearing counsel for appellant had ample opportunity to cross examine the probation officer on these matters.
A reading of the transcript of evidence which reported the probation hearing did not show that any of the information or assumptions about the appellant were materially incorrect. Further, it was not shown that the court had relied on any undisclosed pre-sentence information. The probation officer testified that he had obtained the information used as the basis of his report from the same sources who had spoken with the trial judge and that the information imparted was substantially the same in both instances. Also a copy of the pre-sentence report was given to defense counsel before the hearing.
We distinguish Poole v. State, 44 Ala. App. 169,204 So.2d 564, from the case at bar because, in Poole, the appellant challenges the use of any pre-sentence report, and the court held that a pre-sentence report is acceptable as long as it is received in open court. In this appeal, the appellant complains that the information, which was the basis of the pre-sentence report, was gathered outside of court. Of course, any pre-sentence report is compiled of information gathered outside the court, but, as long as that report is disclosed in open court and the appellant given an opportunity to cross examine the author of that report, the requirements of Poole are met.
From our reading of the record, we find that there were two instances in which the trial judge had possibly talked with other persons regarding the appellant out of court. Appellant's wife was called to his office by the judge to answer certain parts of the pre-sentence report when the probation officer stated he had been unable to contact her. The probation officer was present during part of her visit and she was a witness at the probation hearing, and thus available for cross-examination by appellant.
Secondly, appellant's sister-in-law contacted the probation officer regarding some threats she stated appellant had made to his wife, and claimed she had also called the trial judge regarding the threats. The probation officer, as a witness at the probation hearing, was available for cross-examination by appellant regarding this part of his report. Under these facts, we do not find that the judge made an inquiry regarding the appellant out of court, and no conflict with Poole, supra, is apparent.
In our judgment, the appellant has failed to show any abuse of the discretion of the trial court and, without such showing, the ruling of the trial court will not be disturbed.
We have searched the record and transcript of evidence for error and have found none, therefore, the judgment of conviction by the Circuit Court of Walker County is affirmed.
AFFIRMED.
All the Judges concur.