**Malcolm Rent JOHNSON, Petitioner,**

v.

**DISTRICT COURT OF OKLAHOMA COUNTY, State of Oklahoma, Respondent.**

**No. P–82–198.**

Court of Criminal Appeals of Oklahoma.

Oct. 27, 1982.

Robert A. Ravitz, First Asst. Public Defender, Oklahoma County, Oklahoma City, for petitioner.

Robert A. Macy, Dist. Atty., Oklahoma County, John W. Kelson, Asst. Dist. Atty., Oklahoma City, for respondent.

## OPINION

CORNISH, Judge:

The petitioner, Johnson, requests this Court to prohibit the State from bringing him to trial on charges of Rape in the First Degree, Burglary, Robbery in the First Degree and Attempted Rape. Johnson claims that because the State introduced evidence of these crimes during the sentencing stage of a capital case, in which he was sentenced to death, the State is now barred from trying him on these crimes under the double jeopardy provisions of the United States and Oklahoma Constitutions. We must disagree.

At the punishment stage of the petitioner's murder trial, the State called as witnesses five elderly women. Two of the women testified that the defendant had raped and beaten them; three others testified to attempted rape, burglary and assault, identifying Johnson as the assailant. Testimony of the doctors who examined the women and a forensic chemist further linked Johnson to the rapes and attempted rapes. A police officer testified that fingerprints found at one of the rape victim's home matched Johnson's. These cases had not previously been tried and therefore the petitioner had not been convicted of these offenses.

Evidence of these unrelated and untried criminal acts was presented in the murder trial in an effort to prove beyond a reasonable doubt that there existed the probability that the petitioner would constitute a continuing threat to society by committing future acts of violence. The State also introduced evidence of five prior felony convic-

tions which occurred in Illinois. The prior felony convictions included two rapes, two armed robberies and a burglary. Proof of this aggravating circumstance allowed the jury to impose the death penalty. This evidence in the second stage unquestionably caused Johnson to be placed in the position of having to defend himself against several serious allegations. The issue which this Court must resolve is whether the introduction of evidence of unrelated and untried criminal acts at the sentencing stage of a death penalty case bars the State from requiring a defendant to later stand trial for these criminal acts. We hold that double jeopardy does not bar the subsequent prosecutions.

The Double Jeopardy Clause of the Fifth Amendment applies to the states through the Fourteenth Amendment and provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The Supreme Court observed in *United States v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed.2d 300 (1896), that "[T]he prohibition is not against being twice punished, but against being twice put in jeopardy; and the accused whether convicted or acquitted, is equally put in jeopardy at the first trial." The "twice put in jeopardy" language relates to a *potential risk that an accused for the second time will be convicted of the same offense* for which he was initially tried. *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970).

The guarantee against double jeopardy has been held to consist of three separate constitutional protections: (1) against a second prosecution for the same offense after acquittal; (2) against a second prosecution for the same offense after conviction; and, (3) against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). These interests underlying the protection promote the goal of preserving the integrity of final judgments and protecting the individual against oppression by the government. *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65, *reh. den.* 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 197 (1978).

The concern against multiple punishments for the same offense was expressed in *Ex Parte Lange,* 85 U.S. 163, 18 Wall. 163, 173, 21 L.Ed. 872 (1874):

For of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict? Why is it that, having once been tried and found guilty, he can never be tried again for that offence? Manifestly it is not the danger or jeopardy of being a second time found guilty. It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution. But if, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal, he can be again sentenced on that conviction to another and different punishment, or to endure the same punishment a second time, is the constitutional restriction of any value? Is not its intent and its spirit in such a case as much violated as if a new trial had been had, and on a second conviction a sound punishment inflicted.

The argument seems to us irresistible and we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being tried twice for it.

The Oklahoma death penalty statute mandates that the State prove beyond a reasonable doubt the existence of one or more aggravating circumstances before the death penalty can be considered. This Court and the United States Supreme Court have consistently held that in the determination of whether a person's life should be taken or spared, it is the duty of the sentencing body to consider both the circumstances of the offense and the character and propensities of the defendant. *Williams v. State,* 321 P.2d 990 (Okl.Cr.App.

1958); *affirmed,* 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959).[1]

In *Williams v. State,* supra, the Supreme Court addressed the question of whether the multiple punishment prohibition under the Double Jeopardy Clause was violated when the trial court considered evidence of the defendant's prior murder conviction in imposing the death penalty for his subsequent kidnapping conviction. The Supreme Court ruled that the Double Jeopardy Clause was not offended. The Court reasoned:

> In discharging his duty of imposing a proper sentence, the sentencing judge is authorized, if not required, to consider all of the mitigating and aggravating circumstances involved in the crime.... Certainly one of the aggravating circumstances involved in this kidnaping crime was the fact that petitioner shot and killed the victim in the course of its commission. We cannot say that the sentencing judge was not entitled to consider that circumstance, along with all the other circumstances involved, in determining the proper sentence to be imposed for the kidnaping crime. And in view of the obvious fact that, under the law of Oklahoma, *kidnaping is a separate crime, entirely distinct from the crime of murder, the court's consideration of the murder as a circumstance involved in the kidnaping crime cannot be said to have resulted in punishing petitioner a second time for the same offense,* nor to have denied him due process of law in violation of the Fourteenth Amendment. Supra, 358 U.S. at 585–86, 79 S.Ct. at 427. [Emphasis added].

We first will consider whether the subsequent prosecution of Johnson violates the double jeopardy protection against a second

---

**1.** The *Williams* decision was cited with approval in two more recent Supreme Court cases of *Lockett v. Ohio,* 438 U.S. 586, 603, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978); *Gregg v. Georgia,* 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976). In *Gregg v. Georgia* the Supreme Court observed:

> *Furman* mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.
>
> It is certainly not a novel proposition that discretion in the area of sentencing be exercised in an informed manner. We have long recognized that "[f]or the determination of sentences, justice generally requires ... that there be taken into account the circumstances of the offense together with the character and propensities of the offender." *Pennsylvania ex rel. Sullivan v. Ashe,* 302 U.S. 51, 55, 58 S.Ct. 59, 61, 82 L.Ed. 43 (1937). See also *Williams v. Oklahoma,* 358 U.S. 576, 585, 79 S.Ct. 421, 426, 3 L.Ed.2d 516 (1959); *Williams v. New York,* 337 U.S. [241] at 247, 69 S.Ct., [1079] at 1083 [93 L.Ed. 1337]...
>
> .    .    .    .    .
>
> ... Much of the information that is relevant to the sentencing decision may have no relevance to the question of guilt, or may even be extremely prejudicial to a fair determination of that question. This problem however, is scarcely insurmountable. Those who have studied the question suggest that a bifurcated procedure—one in which the question of sentence is not considered until the determination of guilt has been made—is the best answer. The drafters of the Model Penal Code concluded:
>
> "[If a unitary proceeding is used] the determination of the punishment must be based on less than all the evidence that has a bearing on that issue, such for example as a previous criminal record of the accused, or evidence must be admitted on the ground that it is relevant to sentence, though it would be excluded as irrelevant or prejudicial with respect to guilt or innocence alone. Trial lawyers understandably have little confidence in a solution that admits the evidence and trusts an instruction to the jury that it should be considered only in determining the penalty and disregarded in assessing guilt. "... The obvious solution ... is to bifurcate the proceeding, abiding strictly by the rules of evidence until and unless there is a conviction, but once guilt has been determined opening the record to the further information that is relevant to sentence. This is the analogue of the procedure in the ordinary case when capital punishment is not in issue; the court conducts a separate inquiry before imposing sentence." ALI, Model Penal Code § 201.6, Comment 5, pp. 74–75 (Ten. Draft No. 9, 1959). When a human life is at stake and when the jury must have information prejudicial to the question of guilt but relevant to the question of punishment, in order to impose a rational sentence, a bifurcated system is more likely to ensure elimination of the constitutional deficiencies identified in *Furman.*

prosecution for the same offense after conviction. The initial inquiry is what constitutes the "same offense" for double jeopardy purposes. The Supreme Court held in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), that "the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."

Although the *Blockburger* test is the most widely used, it is not the only standard for determining if successive prosecutions impermissibly involve the same offense. Even if offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances, where the second trial requires the relitigation of factual issues already resolved in the first. *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977).

We hold that the State is not attempting to try Johnson a second time for the same offense. Johnson was first tried and convicted of killing Ms. Thompson during the commission of a forcible rape which occurred on October 27, 1981. The unrelated offenses, which the State introduced in the sentencing stage of the Thompson murder trial and for which it is now attempting to prosecute Johnson, are separate and distinct offenses.

It is readily apparent that these offenses are not the same under the *Blockburger* test. Johnson's felony-murder conviction arose out of an October 27, 1981, incident in which Johnson forcibly raped Ms. Thompson. Ms. Thompson subsequently died from injuries she suffered during the rape.[2]

The offenses with which the State has currently charged Johnson were committed against unrelated victims, on different occasions and at different locations. Clearly, they are each separate and distinct acts under the *Blockburger* and *Brown* decisions.

The next issue is whether a subsequent prosecution upon these charges constitutes the imposition of multiple punishment. Johnson contends that because evidence of these untried crimes was used to support the imposition of the death penalty in his first trial, he has already been punished for these crimes. We disagree.

In resolving this issue we draw an analogy to the practice of considering prior criminal convictions of a defendant to impose a harsher sentence under recidivist or habitual criminal statutes. In *McDonald v. Massachusetts,* 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901), the Supreme Court held that double jeopardy is not offended under a habitual offender statute which allows the State to introduce evidence of a defendant's prior convictions in order to impose a harsher sentence. The Court asserted:

> The fundamental mistake of the [appellant] is his assumption that the judgment below imposes an additional punishment on the crimes for which he had already been convicted and punished...
>
> But it does no such thing. The statute ... simply imposes a heavier penalty upon conviction of a felony ... by one who had been twice convicted and imprisoned for a crime.... The punishment is for the new crime only, but is heavier if he is a habitual criminal. Supra, 180 U.S. at 312, 21 S.Ct: at 390.

This reasoning is equally viable in regard to the sentencing stage in a capital murder trial. The death penalty statute authorizes the imposition of the death penalty where the State proves beyond a reasonable doubt the existence of one or more aggravating circumstances, which outweigh any mitigating circumstances. The punishment is solely imposed for the crime of murder in the first degree. The fact that other unrelated offenses or prior convictions are used to prove the aggravating circumstances cannot be held to have resulted in punishing the defendant a second time for the "same offense." *Williams v. Oklahoma* supra.

---

**2.** We note that the State is barred from subsequently trying Johnson on the rape which was used as the predicate felony for the felony-mur-

der prosecution. See *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), *Brown v. Ohio,* supra.

We hold today that evidence of aggravating circumstances at the sentencing stage in a capital case does not establish an independent crime. Therefore, we find the double jeopardy prohibition is inapplicable. To find otherwise would abrogate the legislative intent to hold a defendant responsible for his separate and distinct acts of criminal misconduct.

Furthermore, during the sentencing stage of a capital case the court or jury may consider relevant evidence that might not otherwise be admissible at trial, i.e., evidence of other crimes, and prior convictions. There must be due process limitations on the introduction of this evidence during the sentencing stage. However, the consideration of this evidence does not constitute double jeopardy. The defendant is not being punished a second time for the same offense; instead, the evidence is used to establish the defendant's character and criminal propensities which may justify the imposition of the death penalty.

The petitioner's Writ of Prohibition is DENIED.

BRETT, P.J., and BUSSEY, J., concurs.