14-2128-cr
*United States v. Scott*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

        At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of June, two thousand fifteen.

PRESENT:    JOSÉ A. CABRANES,
            ROSEMARY S. POOLER,
            DENNY CHIN,
                    *Circuit Judges.*

UNITED STATES OF AMERICA,

            *Appellee,*                               No. 14-2128-cr

            v.

WILLIAM S. SCOTT, JR.,

            *Defendant-Appellant.*


FOR DEFENDANT-APPELLANT:        Peter J. Tomao, Garden City, NY.

FOR APPELLEE:                    Emily Berger, Lauren Howard Elbert, Assistant United States Attorneys, *for* Kelly T. Currie, Acting United States Attorney, Eastern District of New York, Brooklyn, NY.

        Appeal from a judgment of the United States District Court for the Eastern District of New York (Sandra L. Townes, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the case be **REMANDED** for resentencing.

Defendant-appellant William Scott appeals from a January 24, 2014 judgment of conviction and sentence, which was entered by the District Court on March 24, 2014.

**A.**

On January 24, 2014, Scott was convicted, pursuant to a guilty plea, of one count of conspiracy to pass, possess, and utter counterfeit currency, in violation of 18 U.S.C. §§ 371, 472. He was principally sentenced to 22 months' imprisonment and is currently imprisoned.[1] On appeal, Scott only challenges his sentence. We assume the parties' familiarity with the facts and procedural history, which we reference only as necessary to explain our decision.

A district court's sentence is reviewed for reasonableness. *United States v. Gilliard*, 671 F.3d 255, 258 (2d Cir. 2012). Under this "deferential abuse-of-discretion standard," we first consider whether the district court committed procedural error. *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*) (internal quotation marks omitted). A district court "errs procedurally if it does not consider the § 3553(a) factors, or rests its sentence on *a clearly erroneous finding of fact*." *Id.* at 190 (emphasis supplied). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Guang*, 511 F.3d 110, 122 (2d Cir. 2007) (internal quotation marks omitted).

Here, Scott challenges the sentence imposed by the District Court on procedural grounds. Specifically, he asserts that the District Court erred in applying two enhancements—under U.S.S.G. §§ 2B5.1(b)(2)(A) and 2B5.1(b)(3)—which required the District Court to find that Scott manufactured and produced counterfeit currency.[2]

---

[1] Scott was originally indicted by a grand jury in the United States District Court for the Middle District of Florida. In early September 2010, the case was transferred to the United States District Court for the Eastern District of New York.

[2] Scott's exposure under the U.S. Sentencing Guidelines was determined as follows. First, his offense level of 13 was calculated by taking a base offense level of 9 and applying: (1) a one-level enhancement for the counterfeit currency's value; (2) a two-level enhancement for manufacturing or producing counterfeit currency under U.S.S.G. § 2B5.1(b)(2)(A); (3) a three-level enhancement to 15 under U.S.S.G. § 2B5.1(b)(3) (stating that if defendant manufactured counterfeit currency, and if the offense level is less than 15, increase to level 15); and (4) a two-level reduction for acceptance of responsibility. *See* Second Addendum to the Presentence Report ¶¶ 12–21. Within criminal history category III, Scott's prescribed sentencing range was 18–24 months' imprisonment. *Id.* ¶ 124.

**B.**

We conclude that the District Court clearly erred in finding that the Government met its burden to establish—by a preponderance of the evidence—that Scott manufactured or produced counterfeit currency. App'x 104; *see United States v. Salazar*, 489 F.3d 555, 558 (2d Cir. 2007) (a district court is "required to use the preponderance of the evidence standard . . . in finding facts relevant to sentencing for Guidelines calculation purposes"). In making this finding, the District Court principally relied on out-of-court statements that Scott's co-conspirators—Erin Comeau and Christopher Brandsitter-Howell—made to law enforcement officers after their arrests. Both of these co-conspirators were arrested while driving a stolen vehicle in Florida. A search of the vehicle revealed $3900 in counterfeit $100 bills in uncut sheets, ten $100 counterfeit bills in Comeau's purse, a Dell laptop computer, an HP Pavilion A600 computer, a Samsung monitor, and an HP monitor and printer. *See* Presentence Report ("PSR") ¶ 4. Earlier that same day, Comeau tried to pass a counterfeit $100 note at a local store. *Id.* ¶ 3. Subsequently, Comeau and Brandsitter-Howell gave statements to police officers to the effect that they were not responsible for producing the counterfeit currency they were caught trying to pass and transport, and that, instead, Scott was responsible. Both witnesses also offered to cooperate against Scott.

For his part, Scott denied manufacturing counterfeit currency, both during his plea allocution before Magistrate Judge Pohorelsky,[3] *see* App'x at 46, and during his presentence interview, *see* PSR ¶ 11. Scott demanded a *Fatico*[4] hearing as to this disputed fact, but the District Court denied the request, in part because the Government could not locate either Comeau or Brandsitter-Howell to testify.

We have long held that a District Court may rely on hearsay evidence during sentencing. *See, e.g., United States v. Martinez*, 413 F.3d 239, 242 (2d Cir. 2005) ("Both the Supreme Court and this Court . . . have consistently held that the right of confrontation does not apply to the sentencing context and does not prohibit the consideration of hearsay testimony in sentencing proceedings."); *Williams v. Oklahoma*, 358 U.S. 576, 584 (1959) ("[O]nce the guilt of the accused has been properly established, the sentencing judge, in determining the kind and extent of punishment to be imposed,

---

Absent the finding that Scott manufactured or produced counterfeit currency, Scott's offense level would have been 8, and his guidelines' sentencing range would, accordingly, have been 6 to 12 months' imprisonment.

[3] On June 1, 2011, Scott pleaded guilty in a Rule 11 proceeding before Magistrate Judge Viktor V. Pohorelsky. *See* Fed. R. Crim. P. 11; *see also United States v. Williams*, 23 F.3d 629, 632 (2d Cir. 1994) (authorizing a district court judge in a felony prosecution to delegate to a magistrate judge the task of administering a Rule 11 allocution, provided the defendant consents). On May 16, 2013, Judge Townes formally accepted Scott's guilty plea.

[4] *See United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978).

is not restricted to evidence derived from the examination and cross-examination of witnesses in open court . . . .").  However, such hearsay evidence must be sufficiently reliable.  *See United States v. Juwa*, 508 F.3d 694, 701 (2d Cir. 2007) ("[F]actual matters considered as a basis for sentence must have some minimal indicium of reliability beyond mere allegation." (internal quotation marks omitted)); *United States v. Fatico*, 579 F.2d 707, 713 (2d Cir. 1978) (stating that "hearsay is admissible in sentencing proceedings" when those statements "are sufficiently corroborated by other evidence").

Here, the statements relied on by the District Court were double hearsay, in that they were memorialized in the written request for indictment summarizing the statements Comeau and Brandsitter-Howell made to law enforcement.[5]  *See* App'x 62–74.  Based upon our review of the record, the statements attributed to Comeau and Brandsitter-Howell do not bear a minimal indicium of reliability—not because we doubt the accuracy of the law enforcement officers' recording of what Comeau and Brandsitter-Howell said, but because both asserted witnesses surely could have been motivated by the circumstances of their arrest to shift blame on to the absent Scott.

On the record before us, the District Court appears to have credited these statements mainly on the basis that they constituted statements against penal interest.[6]  App'x 104 ("when [Comeau] made these admissions to the police in Florida, she made . . . them against her own penal interests").  A statement is against penal interest only if "a reasonable person in the declarant's shoes would perceive the statement as detrimental to his or her own penal interest."  *United States v. Saget*, 377 F.3d 223, 231 (2d Cir. 2004).  Here, Comeau and Brandsitter-Howell were already "caught red-handed," so to speak.  Therefore, their statements—which shifted the blame to Scott for the more serious offense of producing counterfeit currency—plainly *served* their penal interests.  In fact, the record reveals that, as a result of their cooperation, Comeau and Brandsitter-Howell were not sentenced to serve any time in jail, despite the fact that they were the only defendants who were actually caught passing and transporting counterfeit notes.[7]

---

[5] For reasons that are not clear, none of the law enforcement officials who interviewed Comeau and Brandsitter-Howell were made available to testify in person before the District Court.

[6] *See* Fed. R. Evid. 804(b)(3) (a statement is "not excluded by the rule against hearsay if the declarant is unavailable," and if the statement was one "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability").

[7] Comeau pleaded guilty to violating Florida state law—one count of Scheme to Defraud and one count of possession of 10 or more counterfeit notes—and was sentenced to five years' probation.  *See* App'x 69.  She subsequently "absconded," as of May 2012.  *See* Addendum to the

The District Court also erred in concluding that these out-of-court statements were corroborated by other evidence in the record. In reality, the purported corroboration merely supported facts that Scott readily admitted, such as that he: (1) was involved in a counterfeiting conspiracy with Comeau; (2) drove to New York with Comeau's child as a passenger; (3) stayed at the same hotel as Comeau and Brandsitter-Howell; and (4) handled uncut sheets of counterfeit currency. As to the latter, Scott admitted during his plea allocution that he handled uncut sheets of currency when he transported them to Comeau's car—this is consistent with the fact that Scott's fingerprints were found on two of the sheets. *See* App'x 105. There is simply insufficient independent evidence in the record to prove the crucial allegation made by Comeau and Brandsitter-Howell—namely, that Scott manufactured or produced the counterfeit currency. Indeed, the fact that Scott's fingerprints were found only on two sheets supports his contention that he only carried them and was not involved in the production.

Therefore, on this record, it is just as likely—if not more likely—that Comeau and Brandsitter-Howell manufactured the counterfeit currency, not Scott. Although there may be some minimal evidence to support the District Court's conclusion to the contrary, we are left, after reviewing all the evidence, with a "definite and firm conviction that a mistake has been committed." *Guang*, 511 F.3d at 122. Accordingly, we conclude that the District Court clearly erred in finding, without a hearing, that Scott manufactured counterfeit currency, and that Scott's sentence is thus infected by procedural error in the calculation of his Sentencing Guidelines range.[8] *See Cavera*, 550 F.3d at 190 ("A district court commits procedural error where it . . . makes a mistake in its Guidelines calculation . . . .").

We remand the case for resentencing.[9] If, on remand, the Government continues to seek a sentencing enhancement under § 2B5.1(b)(2)(A), the District Court is directed to conduct a *Fatico* hearing as to the disputed issue of whether Scott manufactured counterfeit currency.

---

Presentence Report at 1. Brandsitter-Howell also appears to have been prosecuted only "locally in the State of Florida." *See* Presentence Report ¶ 9.

[8] The Government also asserts that the sentencing enhancements at issue here would have been appropriately applied, because the manufacturing of counterfeit currency was a foreseeable act in furtherance of jointly undertaken criminal activity. *See* Gov. Br. at 21-22 (citing U.S.S.G. § 1B1.3). However, because the District Court here did not find that Scott manufactured counterfeit currency on this basis, we decline to reach the question of whether § 1B1.3 properly applies to these circumstances, or whether the enhancement under § 2B5.1(b)(2)(A) only applies when a defendant personally manufactures counterfeit notes. If the Government chooses to press this argument on remand, the District Court may consider it in the first instance.

[9] We deny Scott's request that we direct the case to be assigned to a new District Judge on remand. This is a matter best decided by the District Court. *See* Guidelines for the Division of

## CONCLUSION

For the foregoing reasons, we **REMAND** the case for resentencing. The mandate shall issue forthwith.[10]

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court

---

Business Among District Judges of the Eastern District of New York 50.2(*l*)(1) ("In a criminal case upon reversal of a judgment and a direction for retrial *or resentence*, on receipt of the mandate of the appellate court the clerk shall randomly select a different judge to preside over the case. Notwithstanding this provision the chief judge may order the case assigned to the original presiding judge to avoid placing an excessive burden on another judge." (emphasis supplied)).

[10] The District Court denied Scott's application to be permitted to surrender to the designated institution and for bail pending appeal. *See* App'x 126-27. Accordingly, Scott has been incarcerated for approximately 17 months. Because Scott's Guidelines' sentencing range without the enhancement would have been 6-12 months, we direct the District Court to immediately reassess whether Scott should be granted bail pending resentencing, and to forthwith resentence him.