**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**LLOYD YARWOOD, Defendant**

Crim. No. 70/2001

Territorial Court for the Virgin Islands

Division of St. Croix

October 2, 2002

68

MELVIN H. EVANS, JR., ESQ., Assistant Attorney General, Christiansted, V.I., *Attorney for the Government*

HAROLD W.L. WILLOCKS, ESQ., Chief Territorial Public Defender, Kingshill, V.I., *Attorney for the Defendant*

CABRET, *Judge*

## MEMORANDUM OPINION

(October 2, 2002)

Before the Court is the Defendant's motion opposing the introduction of what he terms "unauthorized material" from his sentencing hearing. The defendant challenges a letter submitted by the Women's Coalition of St. Croix ("Women's Coalition" or "Coalition"), on grounds it is unreliable and that the group is not a proper party to speak at sentencing. The Coalition, filing as *amicus curiae*, and the Government refute Defendant's assertions and urge the court to exercise its discretion and consider the information offered. The Court rejects Defendant's arguments that the Coalition is generally prohibited from being heard at his sentencing, but will exclude the letter on due process grounds.

## STATEMENT OF FACTS AND PROCEDURAL POSTURE

The facts pertinent to this motion may be briefly stated, as follows. Defendant Lloyd Yarwood ("Yarwood" or "Defendant") was charged with several serious crimes in connection with a domestic violence incident which left his girlfriend seriously injured. On June 28, 2001, Yarwood pled guilty to assault in the first degree, and the Court set sentencing for July 25, 2001. On July 24, 2001, the Probation Office requested a continuance to September 12, 2001, because the pre-sentence report had not been completed. The Court granted that continuance and scheduled sentencing accordingly.

On the morning of sentencing, the Women's Coalition, a private women's advocacy group, presented a letter to the probation officer. That letter was dated September 11, 2001 and addressed to the undersigned judge. The probation officer subsequently distributed copies to both parties just prior to commencement of the sentencing hearing. The letter contained allegations of prior assaults against the victim, for which the defendant was never charged or prosecuted, as well as the Coalition's

view of the impact of the instant crimes on the victim and its opinion regarding the defendant's disposition.

Counsel for the defendant vehemently opposed the introduction of the letter, and the Court continued the scheduled sentencing to allow both parties an opportunity to brief the issue. The Women's Coalition sought leave of the court to file an *amicus curiae* brief in support of the letter's introduction. On December 5, 2001, the Court granted the coalition leave to intervene and gave the defendant an opportunity to file an opposition by December 21, 2001.[1] Having received no opposition from the defendant, the Court will now decide whether the Coalition's letter may be considered at sentencing under the specific facts of this case. In doing so, the Court will also consider the Coalition's brief in support of the letter's introduction.

## DISCUSSION

Defendant raises several arguments for exclusion of the letter: 1) the Coalition, who is not a party to the events and has no personal knowledge, has no standing to speak at sentencing; 2) the Coalition is not permitted by statute to speak at the sentencing; 3) the letter is inflammatory and prejudicial, to the extent it refers to the defendant's prior acts of domestic violence; and 4) the information is inaccurate and unreliable and, therefore, violates the defendant's due process rights.

### 1. Who May Be Heard At Sentencing?

The defendant first argues the Coalition may not properly be heard at his sentencing, where it is not a party to the action and is not included among those specifically entitled by statute to speak at sentencing.

The Federal Rules of Criminal Procedure governing sentencing proceedings provide:

> At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating

---

[1] The Court set this filing deadline in an oral order on December 5, 2001. On January 9, 2002, the Court issued a written order, *nunc pro tunc* to December 5, 2001, reflecting the December 21 deadline for the defendant to oppose the Coalition's intervention in this case. The Court later extended the date to February 11, 2002 for the defendant to file an opposition, if any. No opposition was ever filed.

to the appropriate sentence, and must rule on any unresolved objections to the presentence report ... .

FED. R. CRIM. P. 32 (c)(1). Before imposing sentence, the Court is additionally mandated to allow the defendant and the *victim* of a crime of violence, to present information bearing on the defendant's sentence. *See* FED. R. CRIM. P. 32 (b)-(e).

This rule provides an absolute right to victims to participate in the sentencing process or, at least, have some input on the issue. That right is further codified in title 34, sections 203(f)(1) and 205 of the Virgin Islands Code ("Victim's and Witness' Bill of Rights"), which afford a victim[2] of a violent crime the right "to participate in the criminal justice process directly or through representation" and the right to submit a victim impact statement for consideration at sentencing. *See*, 34 V.I.C. §§ 203(f), 205 (1996). The Court finds unavailing the defendant's argument that community groups such as that now before the Court are, *a fortiori*, prohibited from participating in the process by virtue of their exclusion from the statute.

First, the Court must give effect to the plain meaning of a statute and "in the absence of compelling reasons to hold otherwise, it is assumed that the plain and ordinary meaning of the statute was intended by the legislature." 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.01 (5th ed.). Thus, if the statute is clear and unambiguous, the Court must not go beyond its plain language and may not insert words into a statute to effect a different meaning. *Id.* at § 46.02.

■ Here, the plain language of the statute is a clear mandate that those specifically enumerated in the statute must be afforded an opportunity to be heard on the defendant's sentencing. However, while the plain language of the Victim's and Witness' Bill of Rights provides an absolute right to victims and witnesses, which may not be questioned or

---

[2] That statute defines victim as:

> [A] person who suffers direct or threatened physical, emotional, or financial harm as the result of the commission or attempted commission of a crime against him. The term victim also includes the immediate family members of a crime victim who is a minor or who is physically or emotionally incapacitated as a result of the crime.

V.I. CODE ANN. tit. 34, § 202(1) (1994). (internal quotation marks omitted).

impeded once invoked, the Court finds no express language that would otherwise prohibit others from entering the sentencing process or submitting relevant information for use at sentencing.

Moreover, the fact that the Legislature chose to use mandatory terms with regard to the rights of victims and witnesses does not compel the conclusion that information from other groups not specifically enumerated is foreclosed from consideration. Indeed, it is often inferred that those things not covered in a statute are otherwise excluded, where the statute specifies and enumerates the persons or things to which it applies. *See, e.g.* SUTHERLAND STAT. CONSTR. §§ 47.18—47.24 (a statute may enumerate or define a group to determine how extensively it is intended to apply, and others not listed are impliedly excluded). However, there are exceptions to this rule of implied exclusion. First, this rule of construction is deemed inapplicable where there is evidence of contrary legislative intent or where there is no evidence that the Legislature intended that the statute be a conclusive treatment of the issue. *See, e.g.* SUTHERLAND STAT. CONSTR. § 47.23, at 217. Additionally, the rule is "inapplicable if there is some special reason for mentioning one thing and none for mentioning another which is otherwise within the statute. ..." *Id.; see also*, § 47.25, at 234-35 (explaining the limitations of this rule and its limited applicability).

Such implicit exclusion of others, who were not named in the statute, is not supported here, where the Legislature's stated intent in enacting the Victim's and Witness' Bill of Rights was only to protect the rights and dignity of "victims and witnesses of crime" and not to otherwise circumscribe the scope of the sentencing inquiry. Indeed, the intent of the Legislature, as expressed in the statute, compels a different result.

> In recognition of the civic and moral duty of victims and witnesses of crime to fully cooperate with law enforcement and prosecutorial agencies, and in further recognition of the continuing importance of this citizen cooperation to Territorial and Federal law enforcement efforts, and to the general effectiveness and well-being of the criminal justice system of the United States Virgin Islands, *the Legislature declares its intent, in this chapter, to ensure that all victims and witnesses of crime are treated with dignity, respect, courtesy, and sensitivity; that the rights extended in this chapter to victims and witnesses are honored and protected by law*

73

*enforcement agencies, prosecutors and judges in a manner no less vigorous than the protections afforded criminal defendants*; and that the Territory has a responsibility to provide support to a network of services for victims of crime, including victims of domestic violence and criminal sexual assault.

34 V.I.C. § 201 (emphasis added); *Accord,* L.R.CR. 32.02 (requiring court to permit victim an opportunity to be heard at sentencing). This statement clearly evinces a legislative intent to encourage victims and witnesses to come forward and to participate in the judicial process, and to ensure that those who do come forward are not re-victimized by the process. Nowhere in this section, however, is there any suggestion that the Legislature, by preserving the rights of victims and witnesses, intended to preclude other groups from speaking at sentencing or to limit the scope of the Court's sentencing inquiry.

Other jurisdictions have similarly rejected arguments that victim impact statutes such as that now before the Court effectively bar other individuals or groups from being heard at sentencing. In *Figgins v. State,* 858 S.W.2d 853 (1993), the Court held that testimony by a representative of Mothers Against Drunk Driving ("MADD") at the sentencing of a defendant convicting of drunk driving-related charges was proper. In so holding, the court rejected arguments that an advocacy group could not be heard at the defendant's sentencing, where a local statute specified only the rights of victims, family members and witnesses. The Court reasoned that the statute merely guaranteed the rights of those specifically named, but did not work to preclude others from testifying "when appropriate." *Figgins,* 858 S.W.2d at 855-56; *see also, Sharp v. State,* 908 S.W.2d 752, 756, *cert. denied* 518 U.S. 1007, 116 S. Ct. 2529 (1995).

In *United States v. Kenny,* 645 F.2d 1323 (9th Cir. 1981), the defendant challenged a letter submitted by the Acting Secretary of the Navy for consideration at his sentencing, following a fraud conviction stemming from government contracts. The letter was submitted directly to the trial judge and contained mainly arguments regarding the violation of public trust, but no factual allegations. *Id.* at 1348-49. The Court found admission of the letter proper, where it consisted of merely

"hortatory"[3] language and contained no false information. *Id.* (citations omitted).

◼ Other jurisdictions have similarly held that courts may consider out-of-court information, submitted by external sources who have no direct relationship to the case, so long as the information bears a "rational relationship" to the defendant's sentencing and due process is not offended. *See, e.g. Williams v. Oklahoma*, 358 U.S. 576, 3 L. Ed. 2d 516, 79 S. Ct. 421 (1959); *United States v. Miele*, 989 F.2d 659 (3d Cir. 1993); *United States v. Alfaro*, 919 F.2d 962, 964 (5th Cir. 1990); *United States v. Matthews*, 773 F.2d 48 (3d Cir. 1985). Thus, the fact that the letter originated with the Women's Coalition, standing alone, is not a sufficient basis for its exclusion in this instance.

## 2. What Information May Be Considered

Under the Federal Rules, a trial judge may consider the prior criminal record, characteristics, and financial condition of the defendant at sentencing, as well as "the circumstances affecting his behavior as may be helpful in imposing sentence ... ." FED. R. CRIM. P. 32 (c)(2).

### a. The Court's Broad Discretion

◼ The Federal Rules, as well as the opinions cited above, are consistent with the long-recognized discretion of judges in fashioning appropriate sentences. Indeed, it is now axiomatic that the information and factors to be considered at sentencing are matters appropriately within the discretion of the sentencing judge. *See, United States v. Tucker*, 404 U.S. 443, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972); *Payne v. Tennessee*, 501 U.S. 808, 115 L. Ed. 2d 720, 111 S. Ct. 2597 (1991). The Supreme Court has recognized, and other jurisdictions have characterized, this discretion as virtually unfettered.

In *Tucker*, the defendant was charged with armed robbery, and the trial judge sentenced him to the maximum statutory term after considering prior convictions which were later found to be invalid. In reviewing whether the trial court's sentencing considerations were proper, the Supreme Court acknowledged the broad sentencing inquiry permitted, holding that:

---

[3] "Hortatory" language is that which tends to incite, encourage or advise. *See* WEBSTER'S NEW WORLD DICTIONARY 678 (2d ed. 1979).

[A judge] may conduct an inquiry broad in scope, largely unlimited either as to the *kind* of information he may consider, or the *source* from which they may come.

*Id.* at 446 (recognizing sentencing judge's broad discretion, but rejecting sentence based on erroneous information) (emphasis added); *see also United States v. McClain,* 676 F.2d 915 (2d Cir.), *cert. denied,* 452 U.S. 919, 101 S. Ct. 3057 (1982). This broad discretion is tied to the well-regarded policy of imposing individualized sentences which take into consideration not only the crime, but also the defendant and the goals of punishment. *See, e.g.,* 3 CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 526 (1982); *Williams v. New York,* 337 U.S. 241, 69 S. Ct. 1079, 1083, 93 L. Ed. 1337 (1949). In keeping with this goal, courts generally disfavor limits on a judge's consideration of information which may be helpful in fashioning a sentence most appropriate for the particular individual. *See, Williams,* 337 U.S. at 246-47.

In *Payne,* the defendant challenged information from the victim's grandmother and the prosecutor regarding the impact of the crime on the victim's family at a capital murder sentencing. There, the Supreme Court specifically rejected earlier restraints on the information that could be considered at sentencing, holding that a trial judge may consider any relevant material. *Payne,* 501 U.S. at 828-29. The Court reasoned that, given the opportunity provided the defendant to present any evidence in mitigation of sentencing, information regarding the victim or demonstrating the loss to the victim's family and to society resulting from the crime similarly may not be constrained. *Id.* at 824-26.

Given this broad discretion, the Court recognized the potential for prejudicial and inflammatory statements entering the process, but reaffirmed its confidence in the trial court's ability to weed out such prejudicial statements from its sentencing decisions and in the constitutional remedies available to safeguard the defendant's due process rights:

"The possibility that this evidence may in some cases be unduly inflammatory does not justify a prophylactic, constitutionally based rule that this evidence may never be admitted. Trial courts routinely exclude evidence that is unduly inflammatory; where inflammatory evidence is improperly admitted, appellate courts carefully review

the record to determine whether the error was prejudicial ... . If, in a particular case, a witness' testimony or a prosecutor's remark so infects the sentencing proceeding as to render it fundamentally unfair, the defendant may seek appropriate relief under the Due Process Clause of the Fourteenth Amendment."

*Id.* The court may, therefore, consider any information it deems relevant to the defendant's sentencing, and which helps to paint a complete picture of the defendant's life, history and characteristics. *See, United States v. Baylin,* 696 F.2d 1030 (3d Cir. 1982); *Oklahoma,* 358 U.S. 576, 3 L. Ed. 2d 516, 79 S. Ct. 421; *But see, Tucker,* 404 U.S. at 446-47.

### b. Limits to Court's Discretion

■ While the trial judge enjoys broad discretion in sentencing considerations, this discretion is, nonetheless, bridled by due process considerations. *See, Gardner v. Florida,* 430 U.S. 349, 359, 51 L. Ed. 2d 393, 97 S. Ct. 1197, 1205 (1977). The United States Constitution forbids the deprivation of one's liberty without due process of law. *See,* U.S. CONST. AMENDS. V, XIV. This due process requirement, found in both the Fifth and Fourteenth Amendments to the U.S. Constitution, commands "fundamental fairness" in judicial procedures. *See, Oklahoma,* 358 U.S. at 584; *see also, State v. Calmes,* 632 N.W.2d 641 (Minn. 2001).

■ In the sentencing context, courts have interpreted the due process clause to require that any information to be factored at sentencing be: relevant, reliable and accurate. *See, e.g. Matthews,* 773 F.2d 48 (information to be considered must have minimal reliability and bear some rational relationship to the sentencing decision); *United States v. Baylin,* 696 F.2d 1030, 1040-41 (3d Cir. 1982); *Tucker,* 404 U.S. at 446-47; *see also,* 12 CHRISTOPHER J. MUELLER, CYCLOPEDIA OF FEDERAL PROCEDURE, § 50.35 (3d ed. 1990). The reliability requirement is met where information "bears sufficient indicia of reliability" to support its "probable accuracy." *See, Williams,* 337 U.S. 241, 93 L. Ed. 1337, 69 S. Ct. 1079; *Baylin,* 696 F.2d at 1040 (holding, relying on *United States v. Weston,* 448 F.2d 626, 633 (9th Cir. 1971), that information may be considered if its accuracy is undisputed; however, verification must be produced to show its probable accuracy, if disputed by the defendant). Therefore, information considered at sentencing must rest on more than

77

mere allegations to satisfy due process reliability concerns. *See, United States v. Miele,* 989 F.2d 659, 663 (3d Cir. 1993).

■ Additionally, due process requires that the defendant be afforded a "meaningful" opportunity to be heard and to refute any information to be considered at sentencing. *See, e.g. Shelton v. United States,* 497 F.2d 156, 159 (5th Cir. 1974) ("adequate opportunity" required); *State v. Owens,* 346 S.C. 637, 552 S.E.2d 745 (S.C. 2001); *see also* FED. R. CRIM. P. 32(c), advisory committee note; *Compare, Mathews v. Eldridge,* 424 U.S. 319, 348-49, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976) (holding, in administrative deprivation case, that due process requires not just a mere opportunity to be heard; rather, such opportunity must be "meaningful"). In line with these considerations, a defendant's due process rights are violated where a sentencing decision is based on inaccurate information or misinformation. *See, e.g. McClain,* 676 F.2d 915; *see also Townsend v. Burke,* 334 U.S. 736, 92 L. Ed. 1690, 68 S. Ct. 1252 (1952) (reversing sentence, where judge considered erroneous criminal record); *United States v. Ibarra,* 737 F.2d 825 (9th Cir. 1984).

Here, while the Court determines that the Coalition may properly submit information to be considered at sentencing, the challenged letter will not be considered in this instance, because the manner in which it was submitted and the information it contains raise due process concerns warranting exclusion.

### 1) Information Contained

■ First, the letter contains allegations of prior instances of domestic violence against the victim, for which the defendant was never charged. Such unproven conduct may not be properly considered at sentencing, where its reliability is not established and where the defendant has not been afforded an opportunity to refute the allegations. *See, Shelton v. United States,* 497 F.2d 156, 159 (5th Cir. 1974) (reversing sentencing for tax evasion, where court relied on alleged and unproved drug trafficking and where defendant had no "adequate" opportunity to rebut the allegations); *Matthews,* 773 F.2d 48 (considering unproven criminal conduct improper, where false or unsupported by reliable evidence). Besides the Women's Coalition's assertions, no reliable evidence was presented to support or verify the allegations of prior conduct. *See, e.g. United States v. Campbell,* 221 U.S. App. D.C. 367, 684 F.2d 141, 152-

53 (C.A.D.C. 1982). Considering such information at sentencing would, therefore, offend due process.

## 2) Manner of Submission

■ Further, information to be considered at sentencing may not be submitted *ex parte*, because such communication essentially defeats the defendant's due process right to be heard and to challenge any information to be factored at sentencing. *See, United States v. Huff*, 512 F.2d 66, 70-71 (5th Cir. 1975); *see also, United States v. Rosner*, 485 F.2d 1213, 1230-31 (2d Cir. 1973) (reversing sentence where judge relied on *ex parte* memo from prosecutors citing alleged prior conduct of the defendant which had not been proven), *cert. denied*, 417 U.S. 950, 41 L. Ed. 2d 672, 94 S. Ct. 3080 (1974); *Kenny*, 645 F.2d at 1348.

In this instance, the Women's Coalition's letter was directed to the undersigned judge and delivered to the Probation Office on the day of sentencing. It is apparent the Coalition did so without providing a copy to the defendant. Rather, the Court made a copy of the letter available to the defendant and the government shortly before the hearing commenced.[4] This last-minute submission undermined the defendant's right to challenge the information in any meaningful way.

Moreover, the manner in which the letter was submitted also deprived the Court of any opportunity to verify the accuracy of the information, which was intended to influence the defendant's sentencing. *See, e.g. Huff*, 512 F.2d at 71 (citations omitted); *see also, United States v. Lemon*, 232 U.S. App. D.C. 396, 723 F.2d 922 (D.C. 1983) (due process violated if the sentencing process creates a significant *possibility* that misinformation infected the decision).

Because of the need to base sentencing only on accurate information, this Court utilizes its Probation Office to conduct pre-sentence investigations, the results of which are recorded in pre-sentence reports. *See*, FED. R. CRIM. P. 32 (c); *see also, Williams*, 337 U.S. at 249 (pre-sentence reports permit the judge to consider the "best available" information, rather than relying on guesswork). The information in such reports is disclosed to the respective defendant within a reasonable time,

---

[4] It is incomprehensible to this Court why the Coalition submitted its letter at the eleventh hour, for a sentencing which has been pending for over two months and which was previously continued from July 25, 2001.

to afford him the opportunity to challenge any information he deems inaccurate or improper, consistent with due process requirements. This process ensures the Court's reliance solely on objective, accurate and verified information in determining an appropriate sentence in each instance. *See*, WRIGHT AND MILLER § 522; *United States v. Grayson*, 98 S. Ct. 2610, 2614 n. 9, 438 U.S. 41, 48, 57 L. Ed. 2d 582 (1978) (noting that federal rules, following the inception of rules governing pre-sentence reports, have all been aimed at increasing judicial reliance on such reports at sentencing). While there is no *per se* bar against considering information from external sources, *see, e.g. Kenny*, 645 F.2d at 1348-49; 3 WRIGHT AND MILLER § 526; MUELLER § 50.34, the reliability determination which due process requires cautions against reliance on such information, particularly where its accuracy is questioned. *See, e.g. Rosner*, 485 F.2d at 1231. Given these important considerations, the Court concludes that the manner in which the letter was submitted violates due process. Accordingly, the Court will continue, as it must, to adhere to its practice of relying only on information whose reliability has been determined through its Probation Office, and will refuse to consider any information submitted in a manner which deprives the defendant or the Court a meaningful opportunity to challenge or meet that information prior to a sentencing determination.

## CONCLUSION

 While the Women's Coalition may, generally, submit appropriate information to be considered at the defendant's sentencing, this court will not consider the Coalition's letter in this instance, because the information it contains and the manner in which it was submitted do not comport with due process requirements. Because of the timing and manner of its submission, the letter constitutes an *ex parte* communication with the Court and effectively deprives the defendant of any meaningful opportunity to meet or defend against the information prior to the scheduled sentencing. Moreover, the letter does further violence to the defendant's right to due process, because it contains allegations of unproven conduct by the defendant, unsubstantiated by credible evidence of its reliability. The Court will, therefore, grant the defendant's motion to exclude the Coalition's letter from consideration at sentencing. An appropriate order is attached.